**In re Edna Mae OLIVER, Debtor.**

**Bankruptcy No. 88–3791–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

April 14, 1989.

Howard R. Haralson, Oklahoma City, Okl., for debtor.

Carl Bagwell, Oklahoma City, Okl., for Oklahoma Highway Credit Union.

### ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

This order will be the culmination, and hopefully the conclusion of an unnecessar-

ily convoluted set of circumstances. The interplay between the facts and the statutory and regulatory time periods applicable to them, though wholly inadvertent and unintended, is worthy of a law school final examination.

Debtor and her husband were jointly indebted to creditor, Oklahoma Highway Credit Union, on an unsecured promissory note and for separate loans secured by a Hyundai automobile, by a Toyota pickup truck and by a tract of real estate in Logan County, Oklahoma. They were subsequently divorced, debtor herein being awarded the Hyundai automobile and her former husband being awarded the pickup truck and the real estate. Both subsequently filed petitions in bankruptcy, *pro se*, under Chapter 7 of the Bankruptcy Code.

On July 14, 1988, one month and one day following the filing of her petition, debtor and her former husband entered into reaffirmation agreements with the creditor credit union as to each of the four loans described above. On September 14, 1988, debtor received her discharge. On September 22, 1988, two of the reaffirmation agreements were filed herein and on September 26, 1988, debtor's motions for approval of the reaffirmation agreements were filed. On October 11, 1988, a hearing was held before this court in accordance with the provisions of 11 U.S.C. § 524(d), in order to determine whether the agreements should be approved. At the hearing, at which debtor and her former husband appeared, *pro se*, and the creditor appeared by counsel, the court, after advising and questioning debtor and her former husband, determined that it would not be in the best interest of debtor to approve the reaffirmation of her obligation upon the pickup truck and land in which she had no further interest or upon the unsecured note. Similarly, the court determined that the reaffirmation agreements of debtor's former husband should not be approved as to his obligation on debtor's automobile, in which he had no further interest, or as to the unsecured note. The court therefore announced that, as to debtor, the reaffirmation agreement as to her obligation on the indebtedness secured by her Hyundai automobile would be approved, but that, as to debtor, the remaining reaffirmation agreements would not be approved.

It should be noted that after the court announced its ruling, counsel for the creditor continued to argue that the debtors should be permitted to reaffirm all of the debts, including that represented by the unsecured promissory note, because "they want to pay their debts and it is the honorable thing to do." Exercising considerable restraint, the court pointed out to counsel that, under 11 U.S.C. § 524(f), debtors were free to voluntarily repay any debt at any time. Declining to reestablish their contractual obligation to do so, as approval of the reaffirmation agreements would have done, the court then reaffirmed its ruling.

Further complicating matters, many of the documents obviously prepared and submitted by the creditor, although filed in the name of debtor, bore incorrect case numbers, as did the orders subsequently prepared and submitted by counsel for creditor some three weeks later.

On November 1, 1988, the court entered its order approving the reaffirmation by debtor of her obligation on the note secured by her Hyundai automobile. Concurrently, the court rejected and returned to counsel for creditor drafts of orders which would have approved the reaffirmation agreements which had been rejected specifically, on two occasions during the October 11 hearing. The Order Approving Reaffirmation Agreement was filed November 2, 1988.

On December 16, 1988, debtor filed her Notice of Recision [sic] of Reaffirmation Agreement, signed by debtor and her counsel. This counsel had apparently been retained only shortly before the filing of the notice. There is no entry of appearance by this counsel in the file and no application for the approval of his employment as a professional person has ever been filed under 11 U.S.C. § 327.

On December 21, 1988, defendant credit union filed its Response to Recision [sic] of Reaffirmation Agreement, asserting that

the notice was ineffective because it was not timely filed, within sixty days after October 11, 1988. On January 5, 1989, the Notice and Response were set on this court's February 8, 1989 motion docket. At that time, the court took the matter under advisement and directed the parties to submit authorities in support of their respective positions. Both parties thereafter filed briefs and the creditor filed a response to debtor's brief. Actually, the "briefs" are more in the form of argument, as they contain no reference or citation whatever to any judicial authority. The court also notes that both of creditor's "briefs" are single-spaced, contrary to the requirements of the local rules of this court.

By an agreement complying with 11 U.S. C. § 524(c), a debtor may create an obligation the consideration for which is based on a debt which would otherwise be dischargeable. Under § 524(c), such agreement, commonly, but arguably inaccurately referred to as a reaffirmation agreement, (1) must be made before the granting of a discharge; (2) must contain a clear and conspicuous statement advising the debtor that it may be rescinded at any time prior to discharge or within sixty days after it is filed with the court, whichever is later; and (3) must in fact be filed with the court. Further, the agreement will be enforceable only (4) if the debtor has not timely rescinded the agreement by giving notice of rescission to the holder of the claim and (5) if the provisions of § 524(d) have been complied with. Finally, (6), where an individual debtor has not been represented by an attorney during the course of negotiating such an agreement, the court must approve the agreement as not imposing an undue hardship and as being in the best interest of the debtor, unless the debt is a consumer debt secured by real property.

The provisions of § 524(d) require that the court hold a hearing with regard to *any* reaffirmation agreement entered into by *any* individual debtor. At that hearing, the debtor must appear in person, and the court must inform the debtor that such an agreement is not required by the Code or by any nonbankruptcy law, or under any agreement other than pursuant to § 524(c). The court must also inform the debtor of the legal effect and consequences of the agreement and of a subsequent default under it.

It is this court's experience that much confusion and misinformation surrounds this area of the law. A brief history of its development would appear to be appropriate in order to place these requirements in proper perspective. Under the Bankruptcy Act of 1898, as amended, prior to 1970, a discharge did not extinguish the debt, but simply created an affirmative defense to enforcement of that debt in a state court proceeding. That defense, however, had to be specifically pleaded. If it was not, it would be waived, and an ensuing judgment in the state court would be *res judicata* and binding on the federal courts. *Personal Industrial Loan Corporation v. Forgay*, 240 F.2d 18 (10th Cir.1956); *Beneficial Finance Company of Oklahoma v. Sidwell*, 382 F.2d 275 (10th Cir.1967). Thus, prior to 1970, the effect of a discharge was largely a matter to be determined by non-bankruptcy courts in actions by creditors seeking to enforce their claims. *See Glass v. Miller & Kearney*, 577 F.2d 537 (9th Cir.1978).

In 1970, the Act was amended for the dual purposes of more fully effectuating the discharge and making it less subject to abuse by harrassing creditors. *See* S.Rep. No. 91–1173, 91st Cong., 2d sess. 1970. These amendments declared both pre-bankruptcy and post-bankruptcy judgments void as a determination of the personal liability of the debtor with respect to certain debts, enjoined creditors whose debts are discharged from instituting or continuing any action or employing any process to collect such debts as personal liability of the debtor and added a new provision permitting the court to adjudicate the dischargeability of a debt at the request of the debtor or any creditor. 11 U.S.C. §§ 32(f) and 35(c) (1970).

Even after these amendments, however, it was held that the bankruptcy court was without jurisdiction to determine whether

post-discharge acts of the debtor effected a revival or reaffirmation of a previously discharged debt. Such matters were held to be matters of state law to be resolved in a creditor's suit on an alleged obligation in state court. *Glass v. Miller & Kearney, supra.* Thus, it was held that the moral obligation to repay the debt remained, and could constitute sufficient consideration under state law for a new promise to pay.

Increasing concerns that unsophisticated debtors were being victimized by overreaching creditors in this area led the Congress, in the initial drafts of what was to become the Bankruptcy Code of 1978, to determine that reaffirmation should be abolished in its entirety. The term "debt" was redefined in terms of liability [11 U.S.C. §§ 101(4) and 101(11)], and discharge no longer "released the debtor" but discharged the liability. The debt, therefore, and not merely the remedy, as under the Act, was extinguished by the discharge.

While the original house bill flatly banned reaffirmations, the Senate bill did not. As a compromise, they were permitted in business situations, but not for consumer debts secured by other than real property, unless the court affirmatively decided that the reaffirmation would be in the best interest of, and would not impose an undue hardship upon, the individual debtor. Under the initial version of the Code, reaffirmations subject to court review were not effective until that review process had been completed. The 1984 amendments to the Code, however, made agreements complying with § 524(c) immediately effective upon filing with the court, subject to the court's review of the agreement in the exercise of its equitable powers. Court *approval* was still required as to such agreements made by *pro se* debtors. The new procedure was intended to lower the cost of these agreements to the parties and to minimize the burden on the court, while still ensuring that the court be properly informed of such agreements so that it could exercise its equitable powers to protect individual debtors from overreaching. It was anticipated that, in the vast majority of cases, the obligations of the court could be adequately discharged by brief inquiries

to counsel and the debtor and that the presumption should be in favor of ratification of the agreement if sought by both parties. The "cooling off" period was also extended from 30 to 60 days in the 1984 amendments. *See* S.Rep. No. 98–65, 98th Cong., 1st Sess. (1983) [referring to a predecessor bill].

It is clear that the language employed by the Congress in § 524(c) and (d) was carefully chosen to deal with the problem which was perceived to exist at the time the language was drafted, to-wit: Post-bankruptcy attempts to enforce pre-bankruptcy obligations in non-bankruptcy courts using non-bankruptcy law. As is noted above, although the court has an obligation to review *all* agreements entered into pursuant to § 524(c) by individual debtors, the extent of its review and of its obligations is determined by whether the debtor was "represented by an attorney during the course of negotiating" the agreement. This distinction is important in this case, since debtor, though now represented by counsel, was unrepresented at the time the agreement was negotiated and entered into.

In this case, the agreement was entered into two months before the entry of debtor's discharge. The agreement contains, clearly and conspicuously, the required language with regard to the right of rescission. The agreement was filed with the court on September 26, 1988, with debtor's motion to approve the same. Pursuant to debtor's motion, the court held a hearing at which debtor was present in person, advised debtor in accordance with the requirements of § 524(d) and approved the agreement as to the Hyundai automobile as required by § 524(c)(6). The court's order was made by minute entry on the date of the hearing and was memorialized by order (single-spaced), prepared and submitted by counsel for creditor, dated November 1, and filed November 2, 1988.

■ Debtor's counsel urges that the court's hearing on the motion for approval of the reaffirmation agreement did not comply with Rule 4008 of the Federal

Rules of Bankruptcy Procedure. That rule requires that the § 524(d) hearing be held "on not less than 10 days notice to the debtor and the trustee." Counsel urges that debtor was given only eight days notice and that the trustee was not noticed at all. It should be noted here that Rule 4008 has been unchanged since before § 524(d) was amended by the Bankruptcy Act of 1986. That amendment made the holding of *discharge* hearings discretionary with the court, rather than mandatory, but made it clear that a hearing on § 524(c) agreements was still required.

The final sentence in Rule 4008 authorizes a motion by the debtor for approval of a reaffirmation agreement (the only reference to the term in either the Code or the Rules) to be filed either before or at the § 524(d) hearing. It is therefore clear that the Rule 4008 is referring to the pre–1986 mandatory discharge hearing, at which reaffirmation agreements could be submitted and approval, where necessary, obtained, and not to the post–1986 hearing, which was mandated only where the debtor desired to make a § 524(c) agreement. Since the 1986 amendment, therefore, it would appear that notification of the trustee should be required only if the court intended to hold a discharge hearing, and not where the only subject matter of the hearing was to be a proposed § 524(c) agreement.

With regard to the notice provided to the debtor, it is noted that the debtor was present at the hearing and participated therein. Debtor did not contend that she was in any way prejudiced by an inadequacy of notice and the court is convinced that no such prejudice existed.

Debtor's counsel next objects that the creditor did not submit the written order approving the reaffirmation agreement until more than ten days after the court rendered its decision on October 11, and that such failure constituted a violation of the provisions of Local Bankruptcy Rule 12(h)(4). Once again, the court is unaware of, and has not been directed to any, prejudice which resulted from the failure to promptly present the order.

Debtor contends that as a result of the alleged improper notice to the debtor, the failure to notify the trustee and the failure to timely file the order approving the reaffirmation agreement, there is no valid or enforceable reaffirmation agreement between debtor and creditor. It is the opinion of this court that none of the errors or omissions asserted by debtor's counsel, individually or in combination, is or would be sufficient to render unenforceable an otherwise enforceable reaffirmation agreement. The enforceability of the agreement must therefore turn upon the adequacy of debtor's notice of rescission thereof.

Debtor contends that the filing of the agreement with the court should not be deemed to have taken place until the order approving the agreement is filed. While such a construction would obviously provide debtor with more time within which to rescind, it would be inconsistent with the language of the statute. Section 524(c)(3) requires that "such agreement has been filed with the court." In § 524(c)(4), another prerequisite to the enforceability of a § 524(c) agreement, it is required that "the debtor has not rescinded such agreement at any time prior to discharge or within sixty days *after such agreement is filed with the court*, whichever occurs later, by giving notice of rescission to the holder of such claim." [emphasis supplied] As is noted above, the reaffirmation agreement itself was filed with the court as an exhibit to debtor's September 26, 1988 motion for approval of the same. To hold that the filing requirement is not met until an order approving the agreement is entered, in this court's view, would constitute an amendment to, and not a legitimate construction of, the language of the statute.

In the creditor's brief, in connection with debtor's contention that she verbally rescinded her reaffirmation agreement, the following appears: "Section 524 says that Rescision [sic] must be in writing." This statement is made without citation of authority and, based upon this court's careful reading of § 524, is simply not true.

Finally, it is noted that there is no provision in the statute or rules for the filing of

the notice of rescission, only that notice be given to the holder of the claim.

Based upon the foregoing, and in spite of the fact that the court is directed to no authority which would require it to make any finding in this connection, the court finds that the agreement in question was filed with the court on September 26, 1988 and that therefore debtor's notice of rescission, whether given orally by her on November 30, as she contends in her brief, or in writing on December 16, when the same was unnecessarily filed in this court, was given outside the 60–day "cooling off" period provided for in § 524(c)(4), and that therefore the same was ineffective. It is further found that all provisions of § 524(c) and (d) have been complied with. The agreement between debtor and creditor, therefore, regarding the Hyundai automobile, is enforceable to the extent enforceable under non-bankruptcy law.

IT IS SO ORDERED.