**In re Arthur Lee JAMES, Jr. and Sandra Kay James, Debtors.**

**Bankruptcy No. BK–90–05218–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

Nov. 2, 1990.

Melinda Monnet, Oklahoma City, Okl., for debtors.

James D. Stevens, Oklahoma City, Okl., Deputy Gen. Counsel, for Oklahoma Employment Sec. Com'n.

## ORDER ON REAFFIRMATION AGREEMENTS

PAUL B. LINDSEY, Bankruptcy Judge.

On August 7, 1990, debtors filed their voluntary petition under Chapter 7 of the Bankruptcy Code.[1] Debtors were, and are, represented by counsel. Debtors scheduled as secured creditors: The holder of a claim for $112.06 secured by jewelry; the holder of a claim in the amount of $46,000 secured by a mortgage on debtors' homestead; and Tinker Credit Union ("Tinker"), the holder of a $7,600 claim secured by a 1989 Nissan automobile. Debtors filed their Statement of Intention, in which they proposed to retain the property securing each of these debts and to reaffirm each of the same.

Debtors scheduled as unsecured creditors, *inter alia*, Tinker, the holder of a $3,000 claim, and Oklahoma Employment Security Commission ("the Commission"), the holder of an $840 claim. Each of the scheduled debts, secured and unsecured, is described as being the joint obligation of debtors and as being unliquidated.

On September 20, 1990, a Reaffirmation Agreement between debtors and Tinker, dated September 13, 1990, was filed herein. The agreement described a promissory note and the fact that the 1989 Nissan was security for it. It then listed two loans, one in the principal amount of $7,178.89 and the second in the principal amount of $2,934.07, both of which debtors apparently desired to reaffirm. Although it is not altogether clear, it appears that the first listed obligation is the auto loan and that the second is an unsecured "Line–O–Credit."

In accordance with § 524(c)(3), the declaration of debtors' counsel accompanied the agreement, and stated that the agreement

---

1. 11 U.S.C. §§ 101 et seq. References herein to section numbers will be to provisions of the Bankruptcy Code unless otherwise specified.

represented a fully informed and voluntary agreement by the debtors and "according to the debtor's representations to me," that it did not impose an undue hardship on the debtor or debtors' dependents. Counsel manually inserted the following language at the end of the typewritten declaration: "As to the auto loan only as determined by Section 506." By this addition, counsel apparently intended to exclude the unsecured obligation from the declaration and to limit the amount of the auto loan being reaffirmed to the market value of the automobile. *See* § 506(a).

On October 4, 1990, a Reaffirmation Agreement between debtor Arthur L. James, Jr. and the Commission, dated September 25, 1990, was filed herein. The agreement sought to reaffirm an unsecured debt in the amount of $898.80, apparently representing an overpayment of unemployment benefits to Mr. James. In it, debtor agreed to make monthly payments in the amount of $25.00 until the amount of the debt was paid in full. The agreement concluded with the following: "This overpayment accrues interest at the rate of one percent (1%) per month or fraction thereof until repaid." The declaration of debtor's counsel accompanying the agreement is as follows:

> The undersigned declares that the foregoing reaffirmation is a fully informed and voluntary agreement by the debtor; and said debtor stated [to] the undersigned attorney that it does not impose undue hardship on the debtor or his dependents, and that I have no knowledge to the contrary.

At the request of the Commission, a hearing was held before this court, at which debtors were present in person. Debtors' counsel was not present, but another attorney appeared on her behalf. The court inquired of counsel as to the basis for reaffirmation of the unsecured debt to the Commission, and was advised that the reaffirmation was entered into in order to forestall the filing by the Commission of an adversary proceeding, apparently under § 523(a)(2), seeking to establish the debt and to except it from debtor's discharge.

The court then reiterated its conviction that in the vast majority of cases, it is not in the best interest of debtors to reaffirm unsecured debts. Under § 524(f), debtors may voluntarily repay any discharged debt at any time. They are not, however, and may not be, compelled to do so. Reaffirmation places the parties in the same position which they occupied prior to bankruptcy, and compels payment of the reaffirmed debt as though bankruptcy had never been filed. Of course, reaffirmation is available only if both parties, the debtor and the creditor, wish the debt to be reaffirmed. In most instances, where the debt would otherwise be discharged, the creditor will favor reaffirmation.

In the case of a debt secured by real property which debtors desire to retain, reaffirmation is often the only means available to do so. In the case of tangible personal property, it may likewise be the only means of retaining the property if debtors are financially unable to redeem it under § 722.

Where the debt is unsecured, however, debtors usually have nothing to gain and everything to lose by reaffirming. A later unforeseen change of circumstances could prevent debtors from honoring their obligations under the reaffirmed debt, and the creditor could then take appropriate action against them under State law and quite possibly place them in the same position they occupied when they were forced to seek relief under the Bankruptcy Code in the first instance. If the debt is discharged, the discharge injunction of § 524(a) prevents the creditor from taking or threatening any action against debtors, and from making any effort whatever to collect the debt. It does not, however, prevent the debtors from voluntarily paying the debt, as many debtors desire to do. Reaffirmation of unsecured debt deprives debtors of at least a part of the "fresh start" promised them by the Bankruptcy Code and permits a creditor to collect an otherwise dischargeable debt.

At the hearing, the court asked Mr. James whether he understood the advice

given debtors by the court, as required by Section 524(d), and he replied that he did. He also stated, however, that it was going to be difficult for him to meet the $25 monthly obligation imposed under the reaffirmation agreement with the Commission.

▇ This court has previously had occasion to explore the history of reaffirmation legislation, and to discuss the abuses which Congress sought to prevent in the enactment and subsequent amendment of Section 524 of the Bankruptcy Code. *See In re Oliver*, 99 B.R. 73 (Bankr.W.D.Okla. 1989). As the court stated in that case, the procedure adopted in the 1984 amendments to Section 524 was intended to lower the cost of these agreements to the parties and to minimize the burden on the court, while still ensuring that the court be properly informed of such agreements so that it could exercise its equitable powers to protect individual debtors from overreaching. *Oliver*, 99 B.R. at 76. It is quite clear that court review was not intended to constitute merely a rubber stamp of the agreements, even if they were negotiated by debtors with the aid of counsel. Otherwise, the requirement that a hearing be held in such cases and that debtors be personally present would be superfluous.[2]

▇ In most cases, the court's obligations may be adequately discharged by making brief inquiries of counsel and debtors, and there is, and should be, a presumption favoring the reaffirmation decision in cases where debtors and their counsel agree that it is beneficial to debtors.

▇ Where, as here, however, the debt is unsecured and unliquidated, and the reaffirmation was entered into solely to avoid the filing of an adversary proceeding seeking the exception of the debt from debtor's discharge, this court is of the view that its obligation is not so simply discharged. This is not a case where counsel concedes that the adjudication of the threatened adversary proceeding would have resulted in

judgment for the creditor. Counsel has not done so, and it is not for this court to inquire of counsel as to the content of protected communications between counsel and debtors. The reaffirmation in this case is conceded to be a compromise, the result of which was to be the same as if the creditor had filed the adversary proceeding and obtained judgment in its favor.

While such compromises are common in connection with litigation, they may not be appropriate in circumstances such as are present here, where a determination must be made that the result does not impose an undue hardship on the debtor or a dependent of the debtor. The compromise here not only concedes the existence and validity of the debt, in an amount in excess of the amount scheduled as unliquidated, but agrees to pay the same in full, with interest at a rate in excess of that which the creditor could be awarded had a judgment been rendered in its favor. Debtor himself has advised the court that the payments required under the agreement "will be hard" to make.

Moreover, it is noted that § 524(c) permits a reaffirmation agreement "based on a debt that is dischargeable in a case under this title...." The agreement between debtor and the Commission in this case was premised upon the Commission's contention that the debt to it was *not* dischargeable, and upon its threat to file an adversary proceeding for the adjudication of that contention. By entering into the reaffirmation agreement, debtor is in effect conceding that the debt to the Commission is *not* dischargeable. Thus, the agreement between debtor and the Commission may not comply with the provisions of § 524(c) in any event.

▇ The language of counsel's § 524(c)(3) declarations in this case also require examination and comment. If counsel's declaration is to be of benefit to the court in evaluating and reviewing the proposed agreements, as Congress obvious-

---

**2.** This court is aware that Chief Judge Bohanon of this court has held, in *In re Sweet*, 116 B.R. 283 (Bankr.W.D.Okla.1990) that a reaffirmation agreement is valid even if a hearing is not held, if the debtor's lawyer has made the necessary

explanation and declaration under Section 524(c). This court favors the contrary position set forth in *In re Saeger*, 119 B.R. 184 (Bankr.D. Minn.1990); *Arnhold v. Kyrus*, 851 F.2d 738 (4th Cir.1988); *Oliver, supra,* and cases cited therein.

ly intended and expected it to be, it must be *counsel's* declaration, arrived at after such examination and investigation as counsel determines to be necessary and appropriate in the circumstances. In this case, as may be seen from the language quoted above, the portion of counsel's declaration concerning the hardship to debtors is actually that of debtors themselves, with no indication that counsel concurs in the determination, or that any investigation or examination has been conducted leading to the conclusion required by the statute. The court should not be placed in the position of relying upon debtors to satisfy such a pivotal requirement as this. The level of sophistication and the knowledge and understanding of complex issues and terms possessed by debtors varies widely from case to case, and in many instances, they may be incapable of making and articulating an informed determination on the issue. The court should look to counsel, as does the statute, for such satisfaction.

## CONCLUSION

Counsel's declaration with regard to the Tinker agreement is clearly limited to the auto loan, and therefore the requirements of § 524(c)(3) are not met as to the unsecured Tinker loan described in the agreement. As a result, the agreement must be held to be unenforceable as to the unsecured Tinker loan. As to the Tinker auto loan described in the agreement, while counsel's attempt to limit her declaration to the secured component of a loan after application of § 506(a) is interesting, this court knows of no authority under which § 506(a) bifurcation may be employed to reduce the amount of a debt to be reaffirmed under § 524(c) and (d). The reaffirmed Tinker auto loan is therefore held to be enforceable in its entirety.

As to the agreement between debtor and the Commission, for the reasons set forth herein, the same is held to be unenforceable in its entirety.

IT IS SO ORDERED.