Honorable Jim D. Pappas, United States Bankruptcy Judge
Introduction
On October 25, 2017, chapter 7 debtor Jon Dana Cowan ("Debtor"), filed a motion seeking an award of damages and sanctions *340 against Pine Business Center, LLC ("Lessor") for violating the discharge injunction. Dkt. No. 21. Lessor objected to the motion. Dkt. No. 29. On February 13, 2018, the parties presented evidence, testimony, and closing arguments at a hearing. Dkt. No. 36. At the conclusion of the hearing, the Court took the motion under advisement. Having considered the evidence and arguments, as well as the applicable law, this Memorandum sets forth the Court's findings, conclusions and reasons for its disposition of the motion. Rules 7052; 9014.
Facts
In November 2006, Debtor and a business partner entered into a lease agreement with Janice Pecoraro ("Pecoraro"), a representative of Lessor, regarding the commercial property at which they would operate their business ("the Lease"). Ex. 200. The Lease term commenced December 1, 2006 and was to end on December 31, 2009. Id. at 1. Lease payments were initially $880 per month, but were to gradually increase to approximately $940 per month by December 2008. Id.
During the lease term, in September 2008, Debtor filed a chapter 7 petition. Ex. 203. The payments under the Lease were current at that time. While Debtor testified he gave his bankruptcy attorney information regarding the Lease, it was not disclosed as an unexpired lease and Lessor was not listed as a creditor in Debtor's schedules. Ex. 204 at 24. As a result, the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" for Debtor's case was not sent to Lessor by the clerk. Ex. 205 at 3. Debtor testified without contradiction, however, that he personally informed Pecoraro about his bankruptcy case shortly after filing his petition. On December 29, 2008, a discharge was entered, and the bankruptcy case was closed the same day. Dkt. No. 17.
Debtor and his partner continued to do business at the leased premises both during and after the bankruptcy case. Sometime in January 2009, Debtor attempted to negotiate with Pecoraro concerning the amount of the lease payments. Debtor testified that "with the economy", he and his partner felt they could not afford to make the monthly payments which had by then increased to approximately $940. Debtor offered to enter into a new lease, but Pecoraro told him that would not be necessary because the parties could rely on the existing Lease and just change the amount of the lease payments.[1]
On January 20, 2009, Debtor, his partner, and Pecoraro executed a document entitled "First Amendment to Lease Agreement" ("the Amendment"). Ex. 201. The Amendment provided that the "Landlord and Tenant desire to amend the original lease on the terms and conditions set forward in this lease amending agreement"; that the parties agreed to "amend and extend the original lease term" to commence on December 1, 2008, and to expire on June 30, 2011, an 18-month extension on the original term of the Lease; and that "[i]n exchange for the extended lease term," Lessor would forego the payment increase specified under the original Lease, meaning the payment would revert to, and continue for the duration of the Lease, at the previous rate of $910 per month. Id.
Importantly, the Amendment provided that "[e]xcept as set forth in this First Amendment, all of the terms and provisions of the Lease shall remain unmodi fied and in full force and effect *341 ." Ex. 201 at 2 (emphasis added). The Amendment also specified that "[t]his agreement, together with the lease , constitutes the final, complete and exclusive statement of the agreement between the parties pertaining to their subject matter and supersedes any and all prior and contemporaneous understandings or agreements of the parties." Ex. 201 at 1 (emphasis added).
In about June 2009, Debtor's partner left their business. Debtor testified that he could not make the rent payments on his own and vacated the premises within a month after his partner's departure.[2]
On October 28, 2009, Lessor filed a state court action against Debtor and his partner alleging in the complaint that they had breached "the Lease Documents," a reference to both the Lease and the Amendment, and that the " 'First Amendment to Lease Agreement' [ ] varied and altered the terms of the original 'Lease Agreement.' " Copies of both the Lease and Amendment were attached as exhibits to the complaint and their terms incorporated by reference. Ex. 100 at 3, 7. Lessor sought a money judgment against Debtor and his partner for (1) $1,363.90 for unpaid rent at the time Debtor vacated; (2) $6,717.33 for lost rental income incurred by Lessor prior to finding a new tenant; (3) $1,224.71 for costs and damages incurred by Lessor for Debtor's and his partner's failure to leave the premises clean and free of any defects; and (4) reasonable attorney fees incurred in the action. Ex. 100 at 3-5.
Debtor and his partner attempted to represent themselves in the litigation. Debtor testified that, to do so, he drafted and filed a "Pretrial Memorandum" with the state court. See Ex. 101.[3] In the memorandum, Debtor explained that he had filed a bankruptcy petition in the fall of 2008 and received a discharge in December 2008. Id. at 2.
On February 12, 2010, the state court entered a money judgment against Debtor and his partner for $9,429.99. Ex. 102. The parties did not submit a copy of the judgment in evidence, and the Court is therefore unable to determine how the amount of the money judgment was calculated by the state court. However, Debtor testified that, as he understood its decision, the state court did not make a determination concerning whether his debt to Lessor under the Lease had been discharged during his bankruptcy case.
On March 18, 2010, the state court amended the judgment amount to $12,249.00 to add amounts claimed in a memorandum of court costs and attorney's fees filed by Lessor's attorney. Ex. 102. The docket from the state court action indicates that after the amended judgment was entered Lessor took repeated and frequent actions to collect the judgment from Debtor through garnishment and issuance of sheriff's writs. See Ex. 202.
Debtor testified that, at some point, he filed a motion to set aside the judgment in the state court action, arguing that the judgment was void because of his bankruptcy discharge. The state court denied the motion because, according to Debtor, the bankruptcy case "was too old."[4] Debtor *342 testified that, as things now stand, the judgment in Lessor's favor is still active, is unsatisfied, and that he has incurred attorney's fees and costs in attempting to dispute the validity of the judgment both in state court and this Court.
On October 25, 2017, Debtor filed a motion to reopen the bankruptcy case, together with a Motion for Sanctions for Violation of the Discharge Injunction. Ex 203 at 3; Dkt. Nos. 20, 21. The Court granted the motion to reopen Debtor's case on October 31, 2017. Dkt. No. 23. Lessor objected to Debtor's sanctions motion, denying it had violated the discharge. Dkt. No. 29.
Analysis and Disposition
The issues raised by the parties in this Court focuses on whether Lessor violated the discharge order entered in Debtor's bankruptcy case by suing him in state court and attempting to enforce and collect the resulting money judgment.
Subject to exceptions not relevant here, the Code directs that, in a chapter 7 case, an individual debtor shall be granted a discharge from all debts that arose before the date of the filing of the petition, whether or not a proof of claim based on any such debt is filed, and whether or not a claim based on such debt is allowed in the bankruptcy case. §§ 727(a); (b). The discharge order constitutes an "injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" § 524(a)(2). A party who willfully violates the discharge injunction can be held in contempt and sanctioned under § 105(a). Emmert v. Taggart (In re Taggart) , 548 B.R. 275, 286 (9th Cir. BAP 2016), argued , No. 16-60043, (9th Cir. Oct. 3, 2017); Renwick v. Bennett (In re Bennett) , 298 F.3d 1059, 1069 (9th Cir. 2002). If a creditor commences an action and obtains a judgment that is a determination of a debtor's personal liability for a discharged debt, that judgment is void. § 524(a)(1).
Relying on these Code provisions, Debtor alleges that Lessor should be sanctioned for prosecuting the state court action to collect Debtor's discharged debt to Lessor under the Lease, and that Lessor's state court judgment against him is void.
Lessor acknowledges that any claim held by Lessor arising under the Lease was discharged.[5] Therefore, any attempt by Lessor to enforce Debtor's obligations under the Lease would violate the discharge injunction, and any judgment obtained to do so is void. Lessor also concedes that the Lease obligations were discharged in Debtor's no-asset bankruptcy case even though Lessor was not listed as a creditor in Debtor's schedules. See In re Venegas , 257 B.R. 41, 46-47 (Bankr. D. Idaho 2001) (citing Beezley v. California Land Title Co. (In re Beezley) , 994 F.2d 1433 (9th Cir. 1992) ) (holding *343 that debts owed to creditors in no-asset chapter 7 cases are discharged even when not listed in a debtor's schedules).
Despite these concessions, Lessor argues it should not be sanctioned for violating the discharge because, under the facts, when it sued Debtor in state court, it was not attempting to collect on Debtor's discharged Lease debt, but was solely seeking to enforce his new, post-bankruptcy liabilities arising under the Amendment. For the same reason, Lessor argues that its state court judgment against Debtor is not void. In the Court's view, however, Lessor's attempts to draw such surgical legal distinctions under these facts miss the mark.
A. The Amendment
Lessor argues that the Amendment created new, undischarged, postpetition obligations for Debtor. Debtor disagrees, arguing the Amendment was not a new lease, but was merely an ineffective attempt to revive the already discharged Lease obligations. On these facts, the Court agrees with Debtor.
An "agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part , is based on a debt that is dischargeable" amounts to an unenforceable reaffirmation agreement, unless the parties first comply with the requirements for such agreements under the Code. § 524(c) (emphasis added). Sections 524(c) and (d) provide specific prerequisites to enforceability of a discharged obligations. In re Bennett , 298 F.3d at 1066. "The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts ...." Republic Bank of Cal. v. Getzoff (In re Getzoff), 180 B.R. 572, 574 (9th Cir. BAP 1995). These Code provisions were enacted by Congress to deal with a common problem, indeed, the very mischief present under these facts: "Post-bankruptcy attempts to enforce pre-bankruptcy obligations in nonbankruptcy courts using non-bankruptcy law." In re Bennett , 298 F.3d at 1066 (citing In re Oliver , 99 B.R. 73, 76 (Bankr W.D. Okla. 1989) ).
When bankruptcy intervenes, state courts must recognize "that state law no longer exclusively governs agreements to revive discharged debts." Id. Instead, "a reaffirmation agreement is only enforceable to the extent it (1) is enforceable under applicable nonbankruptcy law and (2) meets the requirements of § 542(c)." Id. (citing § 524(c); Mandrell v. Ford Motor Credit Co. (In re Mandrell) , 50 B.R. 593, 595 (Bankr. M.D. Tenn. 1985) ). Sections 524 (c) and (d) "have been applied strictly by the courts to carry out their remedial purposes and to ensure that they are not evaded by agreements which, though not labeled as reaffirmations, have the effect of waiving the protections of the discharge." 4 COLLIER ON BANKRUPTCY ¶ 524.04 n. 3 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017) (citing In re Bennett , 298 F.3d 1059 ; In re Getzoff , 180 B.R. 572 ).
As shown by the facts here, the Amendment was, in legal effect, a reaffirmation agreement. Without a doubt, through it, Lessor attempted to revive a variety of Debtor's discharged obligations under the Lease. In particular, the title to the document executed by the parties is "First Amendment to Original Lease." Ex. 201. The Amendment made clear that the parties agreed to two new terms, and that "together with the lease ", the Amendment constituted the parties' agreement. Ex. 201 at 1 (emphasis added). And the Amendment expressly provided that "all of the terms and provisions of the Lease shall remain unmodified and in full force and *344 effect ." Ex. 201 at 2 (emphasis added). Moreover, a material part of the consideration offered by Lessor to Debtor was its promise to "forego [collection under] the original agreement [of the rent increase] in exchange for the extended lease term." However, Debtor's obligation to pay that rent to Lessor was discharged.
Lessor argues that Debtor, not Lessor, benefitted from its willingness to enter into the Amendment. But, for present purposes, it does not matter whether Debtor benefitted from Lessor's attempt to revive the terms of the Lease because even if a new agreement provides new consideration to the debtor, it is inconsequential to the legal effect of the agreement if any part of the deal results in revival of discharged obligations. In re Bennett, 298 F.3d at 1067 (citing In re Getzoff , 180 B.R. at 574 ).
In sum, under these facts, the Court concludes that the Amendment was an unenforceable reaffirmation agreement that could not revive Debtor's obligations under the Lease because Lessor failed to comply with the requirements of § 524(c) and (d).[6]
B. Violation of the Discharge Injunction
"[U]nder section 524(a)(2), a discharge of the debt operates as an injunction against commencement of an action to collect on the debt as a personal liability of the debtor." In re Bennett , 298 F.3d at 1066-67. Lessor acknowledges that Debtor's obligations under the Lease were discharged, and the Court has concluded the Amendment failed to revive those obligations because Lessor failed to satisfy the requirements of § 524(c). Thus, any act to enforce Debtor's obligations under the Lease or the Amendment violated the discharge.
Here, Lessor commenced, prosecuted, and obtained a judgment against Debtor in the state court action. Lessor's complaint in that action sought damages for the alleged breaches by Debtor of "the lease documents," which the complaint defined to include the both the Lease and the Amendment. Under § 524(a)(2), Lessor's legal action against Debtor was a violation of the discharge injunction, and under § 524(a)(1), the state court judgment was void. Consequently, the actions taken by Lessor described in the state court's docket to enforce the judgment also each violated the discharge injunction.
C. Sanctions
A party who willfully violates the discharge injunction can be held in contempt and sanctioned under § 105(a). In re Taggart , 548 B.R. at 286. To obtain monetary sanctions for violating the discharge injunction, the debtor must prove, by clear and convincing evidence, "that the creditor (1) knew the discharge injunction was applicable [to the actions] and (2) intended the actions which violated the injunction." In re Bennett , 298 F.3d at 1069. If proven, the burden then shifts to the offending creditor to demonstrate why it was not able to comply with the discharge order. Id. at 1069.
The "actual knowledge" requirement of the first prong is governed by a strict standard that requires "evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim."
*345 In re Davies , 577 B.R. 352, 361 (Bankr. D. Idaho 2017) (quoting In re Taggart , 548 B.R. at 286 ) (emphasis in original). "Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact based inquiry which implicates a party's subjective belief, even an unreasonable one ." Id. (quoting In re Taggart , 548 B.R. at 286 ) (emphasis in original).[7] As for the second prong, a willful violation does not require a specific intent to violate the discharge injunction, but merely requires that the actions that violated the injunction were intentional. In re Taggart , 548 B.R. at 287-88.
Here, Lessor's representative, Pecoraro was informed about Debtor's bankruptcy filing shortly after he filed his petition. However, Pecoraro's actions in negotiating and executing the Amendment are not the focus of Debtor's sanction request. Instead, Debtor targets Lessor's legal action taken against him after he vacated the leased premises. By that time, Lessor was represented by counsel, and Debtor's undisputed testimony is that, in his Pretrial Memorandum in the state court action, he specifically disclosed that he had filed for bankruptcy and received a discharge which precluded enforcement of Debtor's obligations under the Lease. Despite the knowledge imparted by this filing,[8] Lessor, through its lawyers, pressed ahead to obtain, and to enforce, the state court judgment against Debtor.[9] In short, the evidence shows, clearly and convincingly, that Lessor, through its attorneys, was subjectively aware of the existence of Debtor's bankruptcy and the discharge injunction. Despite this knowledge, Lessor's attorneys sought to enforce the Lease and the Amendment in state court in violation of the discharge injunction.
There can also be no dispute that Lessor intended to prosecute the state court action against Debtor to collect damages for breaches, not just of the Amendment, but of the "lease documents" as well. In addition, as discussed below, the tainted efforts by Lessor's attorneys motivated the state court to enter a void judgment.
The Ninth Circuit instructs, "[i]f the bankruptcy court finds that the creditor [ ] willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [the debtor] whole." Espinosa v. U.S. Aid Funds, Inc. , 553 F.3d 1193, 1205 n. 7 (9th Cir. 2008). Indeed, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." Walls v. Wells Fargo Bank, N.A. , 276 F.3d 502, 507 (9th Cir. 2002). Bankruptcy court's have broad discretion in fashioning a remedy for proven violations of the discharge injunction.
*346 In re Mooney , 532 B.R. 313, 327 (Bankr. D. Idaho 2015) (citing Bassett v. Am. Gen. Fin. Co. (In re Bassett) , 255 B.R. 747, 747-58 (9th Cir. BAP 2000), aff'd in part, rev'd in part on other grounds , 285 F.3d 882 (9th Cir. 2002) ).
Here, to compensate him for the discharge violations, the Court concludes that Debtor should be able to recover the attorneys fees and costs incurred in obtaining Lessor's compliance with the discharge injunction in this Court, including those charges for reopening Debtor's bankruptcy case, and filing and litigating this motion.
Debtor's counsel also requested an award of compensatory fees and costs for litigating in state court about the judgment, but the Court declines to grant that relief. First, the Court was given little information about precisely what actions Debtor's counsel undertook in state court, or why they were taken. Second, and more important, the Court fails to understand Debtor's lawyer's decision to dispute the validity of the collection action in state court, as opposed to bankruptcy court. Because of these questions about Debtor's strategy, the Court declines to compensate him for his decision to litigate in state court.[10]
Section 524(a)(1) also provides that a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged[.]" Here, because neither copies of the judgment, nor the decision of the state court denying Debtor's motion to set that judgment aside, were introduced in the record, the Court cannot determine exactly how the state court calculated the amount of the money judgment. However, the complaint provides that the entirety of the relief sought was based on breaches of the "lease documents," which included the Lease and the Amendment. Because of this, the Court concludes the judgment is void pursuant to § 524(a)(1).[11]
Conclusion
Lessor's state court judgment against Debtor is void. Lessor violated the discharge injunction when it commenced and prosecuted the state court action, and obtained a judgment, to enforce Debtor's obligations under the "lease documents", i.e. , the Lease and the Amendment.
Debtor is entitled to recover compensatory contempt sanctions under § 105(a) from Lessor for the reasonable attorneys fees and costs he incurred to enforce the discharge in this Court. Within fourteen (14) days Debtor's counsel shall submit an affidavit detailing such fees and costs; Lessor may object to the amount claimed within seven (7) days; Debtor may respond to any objection within seven (7) days.
*347 Thereafter, a separate order will be entered.

It is unclear whether the lease payments were delinquent at that time. Debtor testified that he and his partner may have not made the December payment, but during cross-examination, he ultimately admitted that he did not know.

Debtor did not testify about whether the lease payments were delinquent at the time he vacated the premises.

The copy of the memorandum in the record does not indicate when, or if, it was filed with the state court. Debtor testified that he obtained the copy of the memorandum admitted in evidence from Lessor's attorney in connection with other pleadings filed in the action.

The parties did not provide the Court with copies of the order filed in the state court action, nor the transcript from the hearing on the motion to set aside the judgment. While, in his brief, Debtor, through counsel, argues that the motion was denied because it was untimely, nothing in the record supports that assertion.

Lessor spends considerable time in argument discussing the status of the lease in relation to the bankruptcy case as a "rejected" lease. See § 365(a) (authorizing a trustee to assume an unexpired a lease); § 365(d)(4)(A) (providing that unexpired lease of nonresidential real property is "deemed rejected" if not assumed by the trustee within 120 days of the petition date); § 365(g)(1) (providing that rejection of an unexpired lease constitutes a breach of such lease "immediately before the date of the filing of the petition"). However, that the lease was deemed rejected in the bankruptcy case is of no consequence when considering Debtor's continuing liability for obligations under the Lease under these circumstances. Simply put, Debtor's liability for any such obligations was discharged.

The Amendment failed to satisfy the requirements of § 524(c) in a number of ways: it was not made before the granting of the discharge and it was not filed with the Court. See § 524(c)(1) and (3). Importantly, § 524(c) also requires that when a debtor enters into a reaffirmation agreement when not represented by an attorney, the bankruptcy court must approve the agreement. This also did not occur in this case.

But see In re Taggart , 548 B.R. at 288 ("Of course, subjective self-serving testimony may not be enough to rebut actual knowledge when the undisputed facts show otherwise.") (citing Chionis v. Starkus (In re Chionis) , BAP No. CC-12-1501-KuBaPa, 2013 WL 6840485, at *8 (9th Cir. BAP Dec. 27, 2013) (citing In re Zilog, Inc. , 450 F.3d 996 (9th Cir. 2006) ) ); In re Dickerson , 510 B.R. 289, 302-03 (Bankr. D. Idaho 2014).

The Court comfortably infers that Lessor's attorney received a copy of the memorandum during the course of the state court litigation based upon Debtor's undisputed testimony that the copy of the memorandum given to this Court was actually obtained when it was attached to Lessor's counsel's request for an award of fees in the state court action, which request included counsel's time spent reviewing that memorandum.

See In re Jones , 389 B.R. 146, 161 (Bankr. D. Mont. 2008) (quoting Stallcop v. Kaiser Found. Hosps. , 820 F.2d 1044, 1050 (9th Cir. 1987) ) (noting that "a person who has consulted with an attorney 'can be charged with constructive knowledge of the law's requirements.' ")

In deciding the appropriate amount of attorney's fees to award as a sanction for a discharge violation, the Court must determine "what portion of those costs was reasonable as opposed to costs that could have been mitigated." In re Roman , 283 B.R. 1, 12 (9th Cir. BAP 2002).

Lessor argued that it was entitled to recover damages because Debtor did not immediately surrender the leased premises to Lessor, based upon § 365(d)(4)(A). That provision, dealing with nonresidential real property leases, requires the trustee , not the chapter 7 debtor, to immediately surrender the leased premises to the lessor when a lease is deemed rejected. While a lessor may assert a claim against the bankruptcy estate for holdover rent when a trustee does not timely surrender the premises, this Code provision does not grant Lessor a remedy against Debtor under these facts. Here, any rights Lessor sought to enforce in state court were grounded in the "lease documents", not in the Code.