In re Roberta BENNETT, Debtor.

Martin Renwick and Annette Renwick, Plaintiffs–Appellants–Cross–Appellees,

v.

Roberta Bennett, Defendant–Appellee–Cross–Appellant.

Nos. 01–55547, 01–55762.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2002.

Filed Aug. 5, 2002.

Stanley P. Lieber, Michelle C. Weinstein, Law Offices of Stanley P. Lieber, Woodland Hills, CA, for the plaintiffs-appellants-cross-appellees.

Carol F. Anderson, George F. Robertie, Anderson & Bennett, Los Angeles, CA, for the defendant-appellee-cross-appellant.

Before THOMAS and RAWLINSON, Circuit Judges, and ARMSTRONG, District Judge.*

## OPINION

ARMSTRONG, District Judge:

This matter comes before this Court on Appellants Martin and Annette Renwicks' ("the Renwicks") appeal of the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's grant of summary judgment in favor of Appellee Roberta Bennett ("Bennett"). Appellants contend that the bankruptcy court erred in (1) refusing to admit parol evidence to clarify an ambiguity in an underlying settlement agreement and (2) finding unenforceable Bennett's promise to remain liable to the Renwicks on a debt discharged in a previous bankruptcy proceeding. Bennett cross-appeals the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's denial of Bennett's motion for attorneys' fees. Bennett argues that the bankruptcy court erred in concluding that an award of attorneys' fees was unavailable under federal law and that the attorneys' fees provision in the contract at issue did not provide for fees incurred after the filing of a lawsuit.

We find that the bankruptcy court did not err in excluding the Renwicks' proffered parol evidence and determining that there was no enforceable promise by Ap-

pellee to pay a debt which was discharged in the bankruptcy proceedings. However, the bankruptcy court erred in failing to consider whether attorneys' fees and sanctions were available under federal law and whether the attorneys' fees provision in the Settlement Agreement was enforceable against the Renwicks.

## I. BACKGROUND

### A. Factual Background

Appellee Roberta Bennett and Diane Abbitt ("Abbitt") were law partners. In 1991, they sought a loan from Abbitt's parents, Martin and Annette Renwick, to finance their law firm. On June 21, 1991, Bennett, Abbitt, and the Renwicks entered into a written loan agreement ("Loan Agreement") under which the Renwicks loaned Bennett and Abbitt $150,000.00. Bennett and Abbitt were required to repay the full amount of the loan on or before May 17, 1993.

On May 18, 1993, Bennett and Abbitt each filed a separate petition for bankruptcy under Title 7 of the United States Bankruptcy Code. The debt to the Renwicks was listed on each of their schedules and the debt was discharged by the bankruptcy court on April 8, 1994.

On June 12, 1996, Bennett and Abbitt dissolved their partnership. However, disputes soon arose between Bennett and Abbitt based on the dissolution of the partnership and each filed suit against the other as well as third parties with related claims. On October 26, 1996, Bennett, Abbitt, and the third parties entered into a written settlement agreement and general release ("Settlement Agreement"). Of importance to this appeal is Paragraph 11, which provided:

---

* The Honorable Saundra Brown Armstrong, United States District Judge for the Northern District of California, sitting by designation.

11. *No Effect on Joint Personal Debts to the Renwicks, David Wexler and/or Karen Blanchard*

Abbitt and Bennett expressly agree that, notwithstanding anything to the contrary contained herein, they shall each remain liable for one half of the debt that Abbitt and Bennett currently owe to Martin and Annette Renwick, David Wexler and/or Karen Blanchard. Abbitt and Bennett will remain liable to those creditors *in the same manner as before this Settlement Agreement was executed.*

(Emphasis added). The Renwicks were not parties to the Settlement Agreement.

Following the Settlement Agreement, Bennett made interest-only payments to the Renwicks. However, in July of 1998, the Renwicks sent a letter to Bennett demanding payment in full within ten days of the letter. Bennett refused and litigation ensued.

## B. *Procedural History*

On October 8, 1998, the Renwicks filed suit against Bennett in California state court alleging breach of contract (i.e., the Settlement Agreement) under a third-party beneficiary theory of liability. Bennett removed the action to federal court on the basis that it was governed by bankruptcy law and sought to reopen the bankruptcy proceedings. In March of 1999, Bennett moved for summary judgment on the ground that the Renwicks were improperly attempting to collect a debt discharged by Bennett's bankruptcy. The Renwicks filed a counter-motion for summary judgment.

On August 5, 1999, the bankruptcy court granted summary judgment in favor of Bennett and denied the Renwicks' counter-motion. The bankruptcy court granted summary judgment in favor of Bennett on two grounds: (1) the Settlement Agreement did not create a new binding promise upon Bennett to pay the Renwicks and (2) even if there were a binding promise, it was unenforceable in light of applicable bankruptcy law. Subsequently, the bankruptcy court denied Bennett's motion for attorneys' fees.

On August 23, 1999, the Renwicks filed a Notice of Appeal to the Bankruptcy Appellate Panel ("BAP"). On February 15, 2001, the BAP issued an unpublished decision affirming the grant of summary judgment in favor of Bennett and denying her motion for attorneys' fees. In affirming the bankruptcy court, the BAP focused on the unenforceability of the agreement. The Renwicks filed the present Notice of Appeal on March 13, 2001.

## II. STANDARDS OF REVIEW

We review the decisions of the BAP *de novo. See In re Filtercorp, Inc.,* 163 F.3d 570, 576 (9th Cir.1998). The bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo. Id.* The Court applies the same legal standard for summary judgment in reviewing the bankruptcy court's decision, viewing the evidence in a light most favorable to the non-moving party to determine if there is a genuine issue of material fact presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *In re Advent Mgmt. Corp.,* 104 F.3d 293, 295 (9th Cir.1997). The bankruptcy court's attorneys' fee determination will only be reversed if the court abused its discretion or erroneously applied the law. *Ford v. Baroff (In re Baroff),* 105 F.3d 439, 441 (9th Cir.1997) (citing *Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.),* 40 F.3d 1059, 1062 (9th Cir. 1994)).

## III. RENWICKS' APPEAL

The Renwicks appeal the bankruptcy court's entry of summary judgment and

the BAP's affirmance, contending that the bankruptcy court should have admitted parol evidence concerning the interpretation of Paragraph 11 of the Settlement Agreement. They also argue that the lower courts erred in concluding that, under California and federal law, there was no enforceable promise by Bennett to pay the Renwicks a new debt.

### A. Contract Interpretation and Admission of Parol Evidence

#### 1. Legal Standard

■■ As provided in the Settlement Agreement, California law governs disputes arising under the contract. Under California law, the interpretation of a contract is a question of law which the court reviews *de novo*. *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal.App.4th 1441, 66 Cal.Rptr.2d 487, 491 (1997); *Ellis v. McKinnon Broadcasting Co.*, 18 Cal. App.4th 1796, 23 Cal.Rptr.2d 80, 82 (1993). "The fundamental goal of contract[ ] interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 552 (1992) (citing Cal. Civ.Code, §§ 1636, 1638); *see also Shaw v. Regents of Univ. of Cal.*, 58 Cal.App.4th 44, 67 Cal.Rptr.2d 850, 856 (1997) ("Although the intent of the parties determines the meaning of the contract ( [Cal.] Civ.Code, §§ 1636, 1638), the relevant intent is 'objective'—that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent.").

■■ In interpreting the contract, a court must consider two questions: (1) whether the writing was intended to be the complete and final expression of the parties' intent and (2) whether the agreement is susceptible to the meaning given to it by the parties. *See Brinderson–Newberg Joint Venture v. Pac. Erectors*, 971 F.2d

272, 276–77 (9th Cir.1992); *Banco Do Brasil, S.A. v. Latian, Inc.*, 234 Cal.App.3d 973, 285 Cal.Rptr. 870, 885 (1991). In this case, the parties agree that the Settlement Agreement was fully integrated. As such, parol evidence concerning the terms not specifically included in the written agreement is generally not permitted. *Banco Do Brasil*, 285 Cal.Rptr. at 885 ("where the parties to a contract have set forth the terms of their agreement in a writing which they intend as the final and complete expression of their understanding, it is deemed integrated and may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.") (citing Cal.Code of Civ. Proc. § 1856; 2 Witkin, Cal. Evidence (3d ed.1986) § 967, pp. 915–916).

■ However, the parol evidence rule does not bar extrinsic evidence to interpret the meaning of express terms. *See Brinderson–Newberg*, 971 F.2d at 277 (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 643–45 (1968)). In order to prevent the rule from being eviscerated by the exception, the contract must be ambiguous and reasonably susceptible to the proffered meaning before parol evidence is permitted. *See id.* "Whether the written contract is reasonably susceptible of a proffered meaning is a matter of law that is reviewed *de novo*." *Id.* (citation omitted).

#### 2. Analysis

■ The Renwicks contend that Paragraph 11 of the Settlement Agreement is ambiguous and reasonably susceptible to their proffered interpretation that Bennett agreed to *a new legal obligation*, and as such, the bankruptcy court should have permitted the introduction of parol evidence to that effect. They argue that over the course of the contract negotiations, it

was the intention of Bennett and Abbitt to create a *new* debt to the Renwicks. In support of this argument, they rely on Abbitt's declaration in which she states that Bennett and Abbitt:

> [P]reviously verbally agreed to repay Plaintiffs the full amount of the money that was originally owed to them under the Loan Agreement. By the terms of the Settlement Agreement, [Bennett] and I simply divided this obligation, expressly agreeing that we would each be responsible for one-half of the amounts still owing to Plaintiffs under the Loan Agreement . . . .

Based upon this declaration, the Renwicks assert that under Paragraph 11, Bennett agreed to pay them one-half the debt that was formerly owed to them under the original Loan Agreement. They also claim that this "new debt" was supported by consideration; to wit, "in exchange for Abbitt releasing and waiving various claims against Bennett, Bennett agreed to pay one-half of the amount she formerly owed to the Renwicks under the Loan Agreement."

Further, they note that there is no mention in Paragraph 11 that the parties anticipated the agreement to be only morally binding and contend that since a moral obligation is unenforceable, there would have been no reason to have included it in an otherwise binding legal contract. Rather, the Renwicks postulate that the contract is reasonably susceptible to an interpretation that Bennett intended to be legally bound by a new debt. Thus, they conclude that since the meaning of "remain liable" is at the very least ambiguous, their proffered parol evidence—namely, the declaration by Abbitt—should have been introduced to interpret Paragraph 11. We disagree.

Paragraph 11 is captioned "No Effect on Joint Personal Debts to the Renwicks ..." and specifically states that the parties "shall *remain liable*" for the debt that they "currently owe" to the Renwicks. As the bankruptcy court accurately noted, the use of "remain" is inconsistent with the creation of a new, different obligation. Since there was no existing legal obligation, the agreement to "remain liable" did not amount to any change in the status quo. A fair reading of Paragraph 11 supports an interpretation that Abbitt and Bennett's intention was to ensure that the waivers and general release would not affect their moral obligation to pay on the discharged debt. Thus, the recitation reflects the parties' good faith intention to continue voluntarily paying on a debt they were no longer legally obliged to repay. Paragraph 11 is not reasonably susceptible to the meaning proffered by the Renwicks. We find as a matter of law that the provision evinces an agreement by the parties that their *existing* liability should continue. The bankruptcy court did not err in precluding the introduction of the Renwicks' parol evidence. Thus, the BAP's decision affirming the bankruptcy court's ruling was appropriate.

### B. *Enforceability of Agreement to Repay Debt Discharged*

Even if the admission of the parol evidence were appropriate, reversal is neither mandated nor warranted. Viewed objectively, the parol evidence proffered by the Renwicks suggests that the parties intended to revive a debt which had been extinguished by the bankruptcy proceeding. Abbitt declares that she and Bennett "previously verbally agreed to repay [the Renwicks] the full amount of the money that *was originally owed to them under the Loan Agreement.*" They "expressly agree[d] that [they] would each be responsible for one-half of *the amounts still owing to [the Renwicks] under the Loan Agreement* . . . ." Moreover, while describing this as a "new" debt, the Renwicks

nonetheless characterize Bennett's obligation as agreeing to "repay" the debt owed to them under the Loan Agreement. Thus, the allegedly new obligation was an attempt to revive liability for the old debt. As such, the question becomes whether an agreement to repay a discharged debt is enforceable.

The Renwicks challenge the bankruptcy court's determination that Bennett's promise to repay the debt was unenforceable, contending that Paragraph 11 constitutes a contract to pay a new debt. Bennett counters that Paragraph 11 is an unenforceable promise under both California and federal law because at most it evidences an intent to pay a discharged debt.

### 1. *Legal Standard*

 The promise to pay in the absence of a legal obligation to do so is generally considered an unenforceable moral obligation. *See, e.g., Passante v. McWilliam,* 53 Cal.App.4th 1240, 62 Cal. Rptr.2d 298, 303 (1997). Under California law, however, an agreement to revive a discharged debt is enforceable even if it was based only on a moral obligation. "In California, the acknowledgment of a prior unenforceable obligation gives rise to a new enforceable promise, supported by a 'moral obligation' which is regarded as sufficient consideration . . . ." *Gen. Credit Corp. v. Pichel,* 44 Cal.App.3d 844, 118 Cal.Rptr. 913, 916 (1975) (citing, *inter alia,* Cal. Civ.Code § 1606).

Some California appellate decisions have held that this rule is applicable to a debt discharged by bankruptcy. *See id.; see also San Diego Mun. Credit Union v. Smith,* 176 Cal.App.3d 919, 222 Cal.Rptr. 467, 469 (1986). However, the import of these decisions in the context of a bankruptcy proceeding is diminished by sections 524(c) and (d) of the Bankruptcy Code. Prior to 1978, the validity and enforceability of agreements to waive the

discharge protections were considered solely matters of state contract law left to the jurisdiction of state courts. *See Glass v. Miller & Kearney,* 577 F.2d 537, 539 (9th Cir.1978). Like California, most states found that a debtor's promise to repay the debt was enforceable despite a lack of consideration. See *Mandrell v. Ford Motor Credit Co. (In re Mandrell),* 50 B.R. 593, 595 (Bankr.M.D.Tenn.1985) (citing 1A J. Moore, COLLIER ON BANKRUPTCY § 17.33–.38 (14th ed.1978)).

However, in 1978, Congress amended the Bankruptcy Code by adding sections 524(c) and (d) which provide specific prerequisites to enforceability of an agreement to repay a discharged debt. The purpose of these requirements was to "deal with the problem which was perceived to exist at the time the language was drafted, to-wit: Post-bankruptcy attempts to enforce pre-bankruptcy obligations in nonbankruptcy courts using non-bankruptcy law." *In re Oliver,* 99 B.R. 73, 76 (Bankr.W.D.Okla.1989); *cf. Republic Bank of Cal. v. Getzoff (In re Getzoff),* 180 B.R. 572, 574 (9th Cir. BAP 1995) ("The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts . . . .") (citing, *inter alia, In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985)). Thus, courts have recognized that state law no longer exclusively governs agreements to revive discharged debts. Rather, as provided under section 524(c), a reaffirmation agreement is enforceable (1) "only to any extent enforceable under applicable nonbankruptcy law . . . ," and (2) provided it meets the specific requirements of section 524(c). *See* 11 U.S.C. § 524(c); *see also In re Mandrell,* 50 B.R. at 595 (looking to state law to determine if reaffirmation agreement is enforceable). If the agreement does not meet both conditions found in

section 524(c), under section 524(a)(2), a discharge of the debt operates as an injunction against commencement of an action to collect on the debt as personal liability of the debtor. *See* 11 U.S.C. § 524(a)(2).[1]

### 2. *Analysis*

 Under California law, an agreement to pay a debt discharged by a bankruptcy court is enforceable despite the lack of new consideration. *See Gen. Credit Corp.*, 118 Cal.Rptr. at 916. Therefore, the Settlement Agreement meets the first condition for a reaffirmation agreement under section 524(c). However, as the bankruptcy court found, it is undisputed that the Settlement Agreement fails to meet the specific statutory requirements of section 524(c). Indeed, the Renwicks conceded before the bankruptcy court that the Settlement Agreement was not a reaffirmation under that section. Because reaffirmation agreements are not favored, strict compliance with section 524(c) is mandated. *See Getzoff*, 180 B.R. at 574 (citations omitted). Absent a valid reaffirmation agreement under section 524(c), Bennett's agreement to repay a discharged debt is unenforceable under section 524(a).

 Nonetheless, the Renwicks contend that bankruptcy law is inapplicable because the Settlement Agreement was in actuality completely separate from the debt discharged.[2] Agreements "between a holder of a claim and the debtor, the con-

sideration for which, *in whole or in part*, is based on a debt that is dischargeable" is governed by the specific requirements of section 524(c). *See* 11 U.S.C. § 524(c) (emphasis added). Thus, a post-petition agreement to repay a discharged debt is not a valid affirmation agreement under section 524(c) if the consideration offered by the debtor is repayment of the discharged debt. *See Getzoff*, 180 B.R. at 574. For example, in *Getzoff*, it was of no consequence that the creditor offered new consideration in the form of an extension of time for repayment of the discharged debt. *See id.* at 574–75 (finding contract between debtor and creditor unenforceable under section 524(a) where debtor agreed to repay discharged debt in exchange for creditor's extension of period for repayment).

According to the Renwicks, Bennett allegedly agreed to be bound by the terms of the Loan Agreement in exchange for Abbitt's release of her claims against Bennett. However, as discussed, the debt owing under the Loan Agreement was discharged in bankruptcy proceedings. Thus, since Bennett's consideration for Abbitt's release was repayment of a discharged debt, this amounts to an attempted reaffirmation. *See Getzoff*, 180 B.R. at 574. The fact that Abbitt allegedly offered Bennett new consideration for repayment of the discharged debt is inconsequential. *See id.* Therefore, because the parties agree that the Settlement Agreement falls short

1. Section 524(a)(2) provides:
 A discharge in a case under this title—... (2)operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ....
 11 U.S.C. § 524(a)(2).

2. The bankruptcy court rejected this argument, finding that because the amount the Renwicks claimed from Bennett via the Set-

tlement Agreement was the identical debt discharged by the prior bankruptcy proceedings, the promise was unenforceable under section 524. The BAP affirmed this reasoning, noting that "[s]ection 524 bars enforcing any obligations based, even partially on a discharged debt ...." "Bennett has no obligation to [the] Renwicks discernible in the settlement agreement without reference to their pre-petition loan to her: whatever consideration there may have been, it was predicated on that discharged obligation."

of the requirements for a valid reaffirmation under section 524(c), the Renwicks' contract claim is barred under section 524(a).

The Renwicks contend that *Watson v. Shandell (In re Watson)*, 192 B.R. 739 (9th Cir. BAP 1996), compels a different result. However, an examination of the unique facts of *Watson* demonstrates that their reliance on this case is misplaced. In *Watson*, the plaintiff sold the defendant his physical therapy business, and in return, the defendant executed two promissory notes. *See id.* at 742. After the defendant defaulted, the plaintiff filed suit in state court and obtained a preliminary injunction requiring the defendant to surrender to a trustee proceeds from accounts receivable pending resolution of the suit. *See id.* at 743. The defendant then filed for bankruptcy. *See id.* Upon a motion by the plaintiff, the bankruptcy court exempted the defendant's obligation under the state court action from the mandatory stay. *See id.* Ultimately, the plaintiff and defendant entered into an agreement in which the plaintiff agreed to dismiss the state court action in exchange for the defendant relinquishing to plaintiff his interests in pre-petition accounts held by the trustee as well as turning over any accounts receivable from pre-petition services. *See id.* When the defendant failed to cooperate in turning over the accounts receivable, the plaintiff brought a second lawsuit in state court. *See id.* The defendant claimed that the suit was barred under section 524(a) as an attempt to collect on a discharged debt and petitioned to reopen the bankruptcy proceedings. *See id.* at 744. He argued that the settlement agreement did not qualify as a reaffirmation agreement under section 524(c) such that the plaintiff's suit should be precluded. *See id.* at 744–45. The bankruptcy court disa-

greed, finding that the settlement agreement was separate from the debt discharged. *See id.* at 744.

The BAP affirmed, finding that the settlement was not a reaffirmation agreement. *See id.* at 748. It found that "[i]n return for relinquishing all rights and claims to the prepetition accounts, [defendant] obtained new consideration consisting of savings of litigation costs and the avoidance of potential contempt fines for disobeying the state court injunction." *Id.* More importantly, no part of the new consideration was based on the discharged debt. *See id.* (distinguishing *In re Gardner*, 57 B.R. 609, 610–11 (Bankr.D.Me. 1986)). Rather, the settlement agreement concerned an obligation to pay collateral that had been released from the automatic stay and was not a reaffirmation of the debt discharged. *See id.*

*Watson* inapposite to the present situation. Unlike *Watson*, Bennett's alleged "consideration" for the "new" promise in the Settlement Agreement was *paying the debt discharged in the bankruptcy proceedings*. Apparently misapprehending *Watson*, the Renwicks continue to focus only on the consideration provided by *Abbitt*, not Bennett. According to them, Abbitt released her claims against Bennett in consideration for Bennett's promise to repay her portion of the debt owed to the Renwicks under the Loan Agreement. Even assuming this is an accurate characterization of the Settlement Agreement, this does not alter the fact that *Bennett's* consideration was repaying a discharged debt. The Renwicks have identified no "debt" which Bennett agreed to repay other than that which was discharged. To the contrary, they concede "that Bennett agreed to pay them one-half of the debt that had formerly been owed to them under the original Loan Agreement."[3] As in

---

3. In their Reply, the Renwicks contend that this debt arose out of the dissolution of the

partnership and not the Loan Agreement. Not only does the language of Paragraph 11,

*Getzoff*, because Bennett allegedly promised to repay a discharged debt, the Settlement Agreement is governed by section 524(c) and hence is unenforceable under section 524(a) for the reasons discussed above.

Based on the foregoing, we find that the BAP did not err in affirming the bankruptcy court's judgment in favor of Bennett on the Renwicks' contract claims.

## IV. BENNETT'S CROSS–APPEAL

### A. Attorneys' Fees Under Federal Law

▆▆▆ We have recently held that section 524(a) may be enforced by the court's contempt power under 11 U.S.C. section 105(a).[4] *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002); *see also Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir.1996) (noting that "[t]here can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court" as recognized by the statutory grant of power to the bankruptcy courts under 11 U.S.C. section 105(a)), *accord Bessette v. Avco Financial Servs., Inc.*, 230 F.3d 439, 444–445 (1st Cir.2000); *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1388–89 (11th Cir.1996). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir.1999) (citation omitted). As discussed by the Eleventh Circuit in Hardy, to justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *See Hardy*, 97 F.3d at 1390 (citing *Jove Eng'g, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1555 (11th Cir. 1996)).

▆▆▆ Therefore, the bankruptcy court clearly had discretion to impose sanctions under section 105(a). The principal questions to be resolved in this appeal are whether (1) the bankruptcy court correctly concluded that the issue of sanctions under federal law was not before it because Bennett failed to properly plead a violation of section 524(a) as a counterclaim and (2) the BAP correctly affirmed the bankruptcy court based on its finding that the "trial court was not, as a matter of discretion, disposed to make such an award under the circumstances without a formal counterclaim having been made."

▆▆▆ The BAP was correct that Federal Rule 54(c) does not require a counterclaim as a prerequisite to consideration of sanctions under section 105(a). So long as a party is entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the party's pleadings. *See* Fed.R.Civ.P. 54(c).[5] Thus,

---

Abbitt's declaration, and the Renwicks' arguments in their Opening Brief contradict this contention, but their Complaint and their letter to Bennett demanding payment on the debt due on the Loan Agreement—three years before the Settlement Agreement—belie any argument that the 'new' debt was anything more than the money due under the Loan Agreement.

4. Section 105(a) provides:
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
 11 U.S.C. § 105(a).

5. Federal Rule 54(c) provides:
 Demand for Judgment. A judgment by default shall not be different in kind from or

the bankruptcy court erred in its conclusion that attorneys' fees were legally unavailable. Moreover, contrary to the BAP's conclusion, divining the bankruptcy court's discretionary inclinations from its ruling is difficult.[6] The court only briefly addressed the availability of fees under federal law and did not discuss the discretionary award of fees under either federal or California law. Because there is an insufficient basis in the record to determine how the bankruptcy court would have exercised its discretion had it concluded that sanctions were available, we reverse the BAP's decision and remand the action to allow the bankruptcy court to consider the appropriateness of sanctions under section 105(a).

### B. Attorneys' Fees as Authorized Under Settlement Agreement

 Under California law, a prevailing party is ordinarily not entitled to attorneys' fees unless the parties have previously agreed to shift fees or the fees are otherwise provided by statute. *See Lerner v. Ward,* 13 Cal.App.4th 155, 16 Cal. Rptr.2d 486, 488 (1993) (citing, *inter alia, Reynolds Metals Co. v. Alperson,* 25 Cal.3d 124, 158 Cal.Rptr. 1, 599 P.2d 83, 85 (1979)); *see also* Cal.Code Civ. Proc. § 1021;[7] Cal. Civ.Code § 1717(a).[8] Paragraph 16 of the Settlement Agreement provides that:

> 16. Enforcement of Agreement
> If any legal action or proceeding is brought to enforce the terms and conditions or other provisions or arise [sic] out of or relate [sic] to this Agreement, the prevailing party shall be entitled to recover any and all costs or expenses, including reasonable attorney's fees incurred in connection with the preparation and filing of the lawsuit.

The bankruptcy court and the BAP concluded that this provision cannot be read to cover the fees incurred by Bennett in defense of the Renwicks' suit. The bankruptcy court found that, by the terms of the agreement, post-filing attorneys' fees

---

exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings.*

Fed.R.Civ.P. 54(c) (emphasis added).

**6.** Bennett notes that the bankruptcy court ruled that an award of $18,033.75 *would be* appropriate "should the appellate court determine that this Court is improperly construing the attorneys' fee provision . . . ." According to Bennett, this shows that the bankruptcy court was inclined to award attorneys' fees. However, her reliance on this quote is misplaced. This statement by the court was made in the context of interpreting the contract under California law and was not a determination of whether fees were available and appropriate under federal law. Under California law, fees are *mandatory* if the provision is applicable to post-filing fees. There is no suggestion that the bankruptcy court

was inclined to award attorneys' fees based on a violation of section 524(a).

**7.** Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

Cal.Code Civ. Proc. § 1021.

**8.** Section 1717(a) provides, in pertinent part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ.Code § 1717(a).

are excluded. The BAP affirmed. Bennett asserts that the bankruptcy court and BAP's construction of Paragraph 16 is too narrow in light of the objective intent of the parties that the prevailing party be entitled to attorneys' fees for pre— *and* post-litigation expenses incurred in litigation to enforce the agreement. The Renwicks counter that because Bennett is essentially proceeding *in propria persona* she is not entitled to attorneys' fees as a matter of law.

 While not addressed by the parties or the courts below, it is first necessary to determine whether the attorneys' fees provision is applicable to the Renwicks.[9] The Renwicks have proceeded on the theory that they are the third party beneficiaries of the Settlement Agreement. Under California law, third party beneficiaries may be liable for attorneys' fees as provided under a contract even if they are not signatories to the agreement. *See Sessions Payroll Mgmt., Inc. v. Noble Constr. Co.,* 84 Cal.App.4th 671, 101 Cal.Rptr.2d 127, 132 (2000); *Real Prop. Servs. Corp. v. City of Pasadena,* 25 Cal.App.4th 375, 30 Cal.Rptr.2d 536, 539–541 (1994) (discussing applicability of attorneys' fees provision to non-signatory plaintiff). "Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney's fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." *Real Prop. Servs.,* 30 Cal.Rptr.2d at 541. Thus, a court must interpret the agreement to determine whether the contracting parties intended the *attorneys' fees provision* to benefit the Renwicks. Courts have generally found a non-signato-

ry third party plaintiff liable for fees based on a contract only if there has been a "sufficient nexus" between the third party and a contracting party such that the third party was entitled to enforce the attorneys' fees provision. *See id.* at 541–42 (finding sufficient nexus between lessor and sublessee to hold non-signatory sublessee liable for attorneys' fees under lease).

However, because this issue has not been addressed by the courts below, we find it appropriate to remand the matter to the bankruptcy court to determine whether the Renwicks were intended third party beneficiaries of Paragraph 16 of the Settlement Agreement.

## V. CONCLUSION

We affirm the bankruptcy court's decision to preclude the admission of parol evidence and grant summary judgment in favor of Bennett. Paragraph 11 of the Settlement Agreement unambiguously provides that Bennett's good faith intention to continue paying on the discharged debt was not to be affected by the general release and waiver. Because the Renwicks' proposed interpretation and parol evidence contradicts this express meaning, we affirm the bankruptcy court's decision to preclude the admission of the parol evidence. Moreover, even if the evidence had been admitted, it demonstrates that at most Bennett intended to revive a debt which had been discharged in the bankruptcy action. Such an agreement is unenforceable because it does not satisfy the strict requirements of 11 U.S.C. section 524(a).

9. The fact that Bennett has successfully established that Paragraph 11 is unenforceable does not necessarily negate the applicability of the attorneys' fees provision in Paragraph 16. *See Milman v. Shukhat,* 22 Cal.App.4th 538, 27 Cal.Rptr.2d 526, 529–30 (1994) (not-

ing that under California Civil Code section 1717, a party is entitled to attorneys' fees even if it prevails by arguing unenforceability so long as the losing party would have been entitled to fees if it had prevailed).

. However, we reverse the bankruptcy court's denial of Bennett's motion for attorneys' fees and remand the action for further consideration. The bankruptcy court erred by concluding that sanctions were not available under federal law. It is therefore necessary to remand to the bankruptcy court to determine whether sanctions are appropriate· under section 105(a). It is also necessary to remand this matter in order for the bankruptcy court to determine whether the attorneys' fees provision in the Settlement Agreement is enforceable against the Renwicks as third party beneficiaries.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.