# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1668


**HIBERNIA NATIONAL BANK**

**VERSUS**

**KEITH TAYLOR AND JOANNE TAYLOR**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2002-4177B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**J. DAVID PAINTER**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses G. Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.


**REVERSED.**


**Rodney M. Rabalais**
**P.O. Box 447**
**Marksville, LA 71351**
**Counsel for Plaintiff-Appellee**
        **Hibernia National Bank**

**Jerold Edward Knoll**
**P.O. Box 426**
**Marksville, LA 71351**
**Counsel for Defendants-Appellants**
        **Keith Taylor and Joanne Taylor**

**PAINTER, Judge.**

The Defendants, Keith and Joanne Taylor, appeal the trial court's judgment which ruled that they were indebted to the Plaintiff, Hibernia National Bank ("Hibernia") as the result of a payment made by Hibernia to the Farmers Home Administration/Farm Service Agency ("FSA"). We reverse, finding that the Taylors' debt to FSA was discharged in bankruptcy and that no valid reaffirmation agreement was entered allowing Hibernia to pay the discharged debt.

**FACTS**

Keith and Joanne Taylor farmed and lived on property in Avoyelles Parish, Louisiana. In 1990, they executed a Collateral Mortgage in favor of Hibernia National Bank secured by more than twenty-six acres of property, and in 1996 they executed a Multiple Indebtedness Mortgage in favor of Hibernia secured by more than thirteen acres of property. Additionally, Hibernia held a first mortgage on some farm equipment. FSA held a second mortgage on that same equipment. However, FSA held the first mortgage on a John Deere tractor on which Hibernia held the second mortgage. In March 2001, the Taylors sold the John Deere tractor for $50,000.00. Because of FSA's security interest, the check paying for the tractor was made out to Keith Taylor *and* FSA. Taylor took the check to FSA where, apparently believing that Hibernia held the first mortgage on the tractor as it did on the other equipment, a representative of FSA endorsed the check without recourse and instructed Taylor to take the check to Hibernia. He did so, and Hibernia credited his account in that amount. On April 6, 2001, Hibernia wrote to the Taylors informing them that the $50,000.00 payment should have been made to FSA, asking them to come in and discuss that matter and stating: "If I do not hear from you within 10

[days] from the date of this letter, or the 16th of April, 2001, I will have no alternative but to pay Farm Service Agency as the legal records indicate their position on this transaction." This payment had not been made by August 6, 2001, when FSA wrote to Hibernia asking that Hibernia reimburse the $50,000.00. On October 2, 2001, FSA wrote to the Taylors demanding payment of the $50,000.00 or replacement of the collateral.

The Taylors filed a petition for protection under Chapter 7 of the U.S. Bankruptcy Code on November 19, 2001. In their schedules, they listed an unsecured debt to FSA of $105,000.00 and debts to Hibernia including a secured debt of $18,361.74. Also filed was a "Chapter 7 Individual Debtor's Statement of Intention," which shows the debtors' intention to reaffirm debts owed to Hibernia, including those secured by the two mortgages, in return for retaining the collateral. The debt to FSA is not included among those to be reaffirmed. At the hearing, Keith Taylor testified that he reaffirmed certain debts to Hibernia; however, he denied reaffirming a note for the $50,000.00. The record before us does not contain any documents evidencing the reaffirmations. The record does not contain the proofs of claim filed in the bankruptcy proceeding by Hibernia or FSA. On March 7, 2002, FSA again demanded repayment of the $50,000.00 from Hibernia. On March 27, 2002, the Taylors received their discharge in bankruptcy.

On June 5, 2002, Hibernia posted a $50,000.00 debit to the Taylors' account and the next day issued a check in that amount to FSA. On July 16, 2002, Hibernia wrote to the Taylors' attorney, as follows:

> In connection with your clients the Taylors, there are several problems with their bankruptcy. Although they filed a reaffirmation agreement for the debt on their residence, the agreement was only signed by Joanne and not by Keith. A copy of the defective reaff [sic] is

attached.[1] Moreover, the mortgage securing the residence is a multiple indebtedness mortgage, which secures all indebtedness of the debtors to Hibernia. A copy of the mortgage is attached. Please refer to definition of indebtedness.

In connection with their debt to Hibernia, in March 2001 the Taylors sold a John Deere tractor and remitted the $50,000 proceeds to Hibernia per Hibernia's perfected security interest in the Taylor's equipment. See copy of UCC-1 and Commercial Security Agreement. At the time of the payment, however, Hibernia had released this particular piece of equipment from its security agreement. Accordingly, the FSA had a first lien on the tractor. In March 2002, the FSA made demand on Hibernia for a return of these funds. A copy of the FSA letter is attached. In June 2002, after reviewing all the documents, Hibernia returned the $50,000 to FSA Copy of check attached.

At this point it is Hibernia's position that if the Taylors want to keep their residence, they will have to include the $50,000 debt in their mortgage debt. Please review this matter with your clients and advise how you wish to proceed.

On July 26, 2002, Hibernia made formal demand on FSA for return of the $50,000.00. Finally, in November 2002, Hibernia filed an "In Rem Petition for Executory Process" and attempted to seize and sell the property described in the Collateral Mortgage and the Multiple Indebtedness Mortgage. The Taylors answered contesting the amounts owed. They further reconvened for wrongful seizure. A hearing was held to determine the amounts owed, and the court rendered judgment setting out the amounts owed to Hibernia by the Taylors and, in particular, found that the Taylors owed Hibernia the $50,000.00 that Hibernia paid to FSA. The Taylors appeal only the ruling with regard to the $50,000.00.

**DISCUSSION**

The pivotal events in this matter are the bankruptcy proceeding filed by the Taylors and the discharge subsequently received by them. A discharge in bankruptcy

---

[1] No copy of this reaffirmation was attached to the letter made part of the record.

"discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727. *See also* 11 U.S.C. § 523.

There is no question that, at the time they filed for bankruptcy, the Taylors still owed the contested $50,000.00 to FSA. Hibernia received the proceeds of the sale of the tractor, and the Taylors did not receive credit for that amount from FSA. The documents and testimony before us lead us to conclude that the $50,000.00 at issue was included in the amount listed in the schedules as owed to FSA. At the time of the filing, this matter was, essentially, a problem between the two creditors as to the proper distribution of the proceeds of the sale of the tractor. Both Hibernia and FSA were aware of the problem before the bankruptcy filing, during the proceedings in the bankruptcy court and prior to discharge. Both had the means and the opportunity to bring the matter to the attention of the bankruptcy court, where it could have been appropriately resolved. The record does not contain a proof of claim or other proceeding of the bankruptcy court which would lead us to believe that the matter was brought to the attention of the bankruptcy court. Further, there is no suggestion that the debt to FSA was reaffirmed. Therefore, it appears that the Taylors' debt to FSA was discharged.

While Keith Taylor testified that he had reaffirmed certain debts, he denied having reaffirmed the note onto which the $50,000.00 was added by Hibernia after they sent that amount back to FSA. He testified that the account had a zero balance at the time of the discharge. This is supported by the transcript of that account introduced into evidence at trial. It showed a zero balance on August 13, 2001, and it was not until June 6, 2002, that a new amount of $50,000.00 was charged to the account. This new charge was not made until over two months after the Taylors'

4

discharge in bankruptcy. Taylor also testified that he never authorized Hibernia to pay the $50,000.00 to FSA and that he never asked for a loan to make that payment.

Even if Taylor had signed a reaffirmation at the time Hibernia sent payment to FSA, it could not be given effect. Under 11 U.S.C. § 524(c) agreements for reaffirmation must be made prior to discharge. The court in *Bankr. Receivables Mgmt. v. Lopez (In re Lopez)*, 345 F.3d 701 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 2015,___ U.S. ___ (2004), discussed a situation where a secured debt was assigned to a third party during a bankruptcy proceeding. The debtors secured a discharge without reaffirming the debt. After discharge, the assignees of the debt contacted the debtors and demanded either the return of the collateral or that the debtors pay the debt back in installments. The court in that case explained:

> In [*Renwick v.*] *Bennett*, [*(In re Bennett),* 298 F.3d 1059, 1067-68 (9th Cir. 2002)] former law partners sued each other over the proper interpretation of a post-discharge settlement agreement, where the parties agreed to pay a debt discharged in bankruptcy in exchange for a release of one partner's claims against the other. *Id.* at 1063. The court observed that Congress amended the Bankruptcy Code in 1978 by adding § § 524(c) and (d) to address the problem of post-bankruptcy attempts to enforce pre-bankruptcy obligations in non-bankruptcy forums using non-bankruptcy law. *Id.* at 1066. The court held that a post-petition agreement to repay a discharged debt is not a valid reaffirmation agreement under § 524(c) if the consideration offered by the debtor is the repayment of the discharged debt. *Id.* at 1067. Since the consideration for the release was repayment of the discharged debt, the agreement amounted to an attempted reaffirmation. *Id.* The fact that one partner allegedly offered new consideration was inconsequential. *Id.* Consequently, the contract claim was barred under §524(a). *Id.* at 1068.

*Id.* at 708-09

As in the case *sub judice,* the creditor in *Lopez* sought to argue that their claim was enforceable as they were seeking to enforce it only *in rem*. The court rejected that argument saying:

5

> BRM seeks to distinguish *Bennett*, which involved an unsecured debt, by arguing that the consideration here was not based "in part" on the discharged debt, but rather on BRM's *in rem* rights in the collateral. The same might be said of every secured reaffirmation agreement. Any creditor could claim *in rem* rights in the collateralization and thereby vitiate the protections of *§ 524(c)*.

*Id.*

We find Hibernia's argument in this regard similarly unpersuasive.

In the absence of a valid reaffirmation providing for payment of the debt, we surmise that the reaffirmation, if any, contained no language allowing Hibernia to include the debt in its post-discharge collection proceedings. As in *Lopez*, "[t]he agreement was not 'made before the granting of the discharge,' pursuant to § 524(c), and therefore is unenforceable, with or without new consideration." *Id*. at 710. Accordingly, we find that Hibernia has no right against the Taylors for the $50,000.00 which it paid to FSA.

Accordingly, the judgment of the trial court in this regard is reversed. Costs of this appeal are to be paid by Hibernia.

**REVERSED.**