FILED

AUG 19 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. NC-13-1469-DJuKu |
| ) | |
| MARCO GUTIERREZ and JENNIFER ) | Bk. No. 08-44503 |
| GUTIERREZ, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| MARCO GUTIERREZ; JENNIFER ) | |
| GUTIERREZ, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| JOHN DIAZ COKER; IRENE MACIAS,) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on July 24, 2014
at San Francisco, California

Filed - August 19, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable M. Elaine Hammond, Bankruptcy Judge, Presiding

Appearances:    Appellants Marco Gutierrez and Jennifer Gutierrez
argued pro se; John Diaz Coker, Esq. argued pro se
and for Appellee Irene Macias.

Before:  DUNN, JURY and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Debtor appellants Marco A. Gutierrez ("Mr. Gutierrez") and Jennifer V. Gutierrez ("Ms. Gutierrez") (collectively, "Debtors") appeal the bankruptcy court's order denying their motion for contempt for violation of the discharge injunction ("Motion") against appellees Irene Macias ("Ms. Macias") and John Diaz Coker ("Mr. Coker") (collectively, "Appellees"). The Debtors contend that the bankruptcy court erred in determining that the Appellees did not willfully violate the discharge injunction. We conclude otherwise, and we AFFIRM.

## I.  FACTUAL BACKGROUND

The Debtors and Appellees each filed multiple, voluminous declarations setting forth their conflicting versions of events in support of and in opposition to the Motion prior to the evidentiary hearing on the Motion before the bankruptcy court, which they have submitted in their excerpts of record. However, the parties did not include in their excerpts of record the bankruptcy court's Memorandum Decision ("Memorandum Decision"), entered on September 9, 2013, that set forth its findings of fact and conclusions of law for purposes of Civil Rule 52(a), applicable with respect to the Motion under Rules 7052 and 9014,[2] or its Order Denying Motion for Contempt ("Order"), entered on the same date. We located and reviewed the Memorandum Decision and the Order in exercising our discretion to review the

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

bankruptcy court's electronic docket and the documents on record therein. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). The following factual narrative relies substantially on the factual information included in the Memorandum Decision.

A.   Pre-Bankruptcy Relations

This appeal arises from the personal relationship between the Debtors and Ms. Macias that ripened into friendship but ultimately soured into estrangement and antipathy. The Debtors formed and operated Hidalgo Properties, a real estate and mortgage brokerage business. Ms. Macias worked for the Debtors from 2006 until 2008, first as a real estate assistant and later as a real estate broker under Mr. Gutierrez' license. Hidalgo Properties eventually grew to encompassing 60 agents and assistants with four branches in Antioch, Citrus Heights, Madera and Concord, California. However, with the recession, Hidalgo Properties and the Debtors fell on hard times, and the Debtors experienced financial difficulties. As Ms. Macias recalled, "Toward the end of the time I was with them [the Debtors] began to do loan modifications and bankruptcies, as their regular real estate business decreased. With the real estate crisis of 2007, their business decreased so much that they fell behind in paying commissions so they lost all but two of their agents." Ms. Macias Declaration, at p. 2.

In July 2007, facing eviction from the Antioch office, the Debtors moved their business office into their home. During the

-3-

period from mid-2007 through 2008, Ms. Macias continued to work for the Debtors. She stated in her Declaration:

> I became the office manager, and continued as agent when all of their other agents left them. My relationship became personal and I even helped [Debtors] with frequent small loans, with housekeeping, and with the care of their children.
>
> I was occasionally paid, but more often I was asked to give them money because they were in financial difficulty with their large house . . . .

Ms. Macias Declaration, at pp. 2-3. Ms. Gutierrez stated in her Declaration that her husband "believed the debt owed to Miguel and Irene Macias to be approximately $50,000." Ms. Gutierrez Declaration, at p. 11.

In his Declaration, Miguel Macias stated, "As Marco Gutierrez' business declined my wife [Ms. Macias] and I became close to them and helped them by sharing some of my earnings from other employment." Miguel Macias Declaration, at p. 2. In fact, when utilities were shut off at the Debtors' home for nonpayment, the Debtors moved their family in with Mr. and Ms. Macias for a short period. However, over time, the relationship between the Debtors and Mr. and Ms. Macias deteriorated to the point where Ms. Macias decided to cut off all ties with the Debtors and ceased communications.

B. The Debtors' Bankruptcy

The Debtors are no strangers to bankruptcy court. They have filed "a total of 14 bankruptcy cases (either jointly or individually)." Memorandum Decision, at p. 2; Mr. Coker Declaration, at p. 8. The chapter 7 case ("Chapter 7 Case") from which this appeal arises was filed on August 19, 2008, and is the only one of the Debtors' bankruptcy cases in which they obtained

-4-

a discharge. At oral argument, Ms. Gutierrez insisted that the Chapter 7 Case was only the Debtors' third bankruptcy filing.

Ms. Macias stated in her Declaration,

During the time I was working with [Debtors] they explained to me how they were using the bankruptcy court to prevent foreclosure on their home and to prevent other collection efforts, since they had no money. Mrs. Gutierrez explained to us that the way they were preventing a foreclosure was by filing for bankruptcy and then not following up on a legal requirement and the case would be dismissed. She explained to us that sometimes there was a three month period between the filing and the dismissal and that interfered with the foreclosure.

Ms. Macias Declaration, at p. 5.

Initially, the Debtors did not list Ms. Macias as a creditor in their schedules. However, two and a half months after the Chapter 7 Case was filed, the Debtors filed an amended Schedule F listing Ms. Macias as a creditor. The amended Schedule F was filed after a notice of a possible distribution to creditors was served. "There is no record of [Ms.] Macias having received notice from the court of the bankruptcy filing at this time, or of the opportunity to file proofs of claim." Memorandum Decision, at p. 2. The Debtors received their discharge by order entered on May 27, 2009.

C. <u>Subsequent Litigation among the Parties</u>

The Debtors first sued Ms. Macias and her husband in Contra Costa Superior Court ("State Court") in January 2010 ("First Suit"). Ms. Macias filed a general denial and affirmative defenses, but did not file a cross-complaint for unpaid wages or commissions. The First Suit was mediated and ultimately was dismissed without any determination of liability.

The Debtors subsequently filed a second lawsuit ("Second

-5-

Suit") against Mr. and Ms. Macias and Ms. Lorena Mendez in State Court on September 13, 2011, setting forth claims for "Defamation, Civil Conspiracy, Misappropriation of Trade Secret and Punitive Damages," seeking damages of "one dollar short of one million." Ms. Macias Declaration, at p. 6; Mr. Coker Declaration, at p. 3. The Second Suit

> was brought after [Ms.] Macias and Lorena Mendez had cooperated with the investigation by the State Department of Real Estate resulting from a complaint by Mr. Oscar Garzon, which ultimately resulted in revocation of Mr. Gutierrez' broker's license, for various violations, including the surreptitious taking of money from the bank account of Mr. Oscar Garzon, the illegal collection of fees in advance of a modification for the same individual and his wife, and for Debtors' acting in the real estate field on suspended licenses.

Mr. Coker Declaration, at p. 3. The defendants answered, and Ms. Macias filed a cross-complaint for unpaid wages, unpaid commissions and abuse of process, pro se but assisted by a law student. Ultimately, the Second Suit was dismissed, again with no determination of liability.

Meanwhile, the Debtors filed a motion to reopen the Chapter 7 Case, which was granted by order entered on January 10, 2012. The Debtors subsequently filed an adversary proceeding complaint against Mr. and Ms. Macias, Mr. Coker and his wife, and Lorena Mendez, asserting claims for violation of the discharge injunction and additional state law claims, to which answers were filed. The bankruptcy court abstained from hearing claims other than the claim for violation of the discharge injunction.

D. Further Proceedings and the Decision on the Motion

In light of the Ninth Circuit's determination that no private right of action exists to enforce the discharge

-6-

injunction, see Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002), the bankruptcy court interpreted the Debtors' adversary complaint as a motion ("Motion") for civil contempt. As noted above, the parties filed multiple, lengthy declarations in support of and in opposition to the Motion.

The Motion was heard at an evidentiary hearing ("Hearing") before the bankruptcy court on August 29, 2013. At that point, the claims against Mr. Macias, Mrs. Coker and Lorena Mendez had been dropped, and the Debtors were pursuing the Motion only against Ms. Macias and Mr. Coker. In addition to the declarations submitted by the parties, Ms. Macias, Ms. Gutierrez and Lorena Mendez testified at the Hearing. At the conclusion of the Hearing, the bankruptcy court took the matter under submission.

In its subsequent Memorandum Decision, the bankruptcy court began its legal analysis by noting that a party who knowingly violates the discharge injunction can be held in contempt under § 105(a), citing Walls v. Wells Fargo Bank, 276 F.3d at 507. The bankruptcy court continued:

> Violation of a discharge injunction requires proof that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions, which violated the injunction. In re Zilog, Inc., 450 F.3d 996, 1007 (9th Cir. 2006). A party seeking contempt sanctions has the burden of proving by clear and convincing evidence that sanctions are justified. In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002).

Memorandum Decision, at p. 3.

The bankruptcy court then stated separate findings as to Ms. Macias and Mr. Coker. As to Ms. Macias, the bankruptcy court noted that the Debtors asserted that Ms. Macias had knowledge of

-7-

their discharge in the Chapter 7 Case because she received a copy of the discharge order from the court. The bankruptcy court further noted that the Bankruptcy Noticing Center sent a copy of the discharge order to Ms. Macias at her home address in Oakley, California ("Residence Property") on May 29, 2009.

However, the bankruptcy court further noted that Ms. Macias testified that she moved from the Residence Property in March 2009 following foreclosure, and that due to a forwarding error, the postal service continued to deliver her mail to the Residence Property. Ms. Macias admitted that she had knowledge of the Debtors' bankruptcy filings, but she testified that she did not know that the Debtors had received a discharge in the Chapter 7 Case. Ms. Gutierrez asserted in her Declaration that Ms. Macias was informed that the Debtors had obtained a discharge during a December 2010 settlement conference. However, the bankruptcy court considered this evidence and rejected it as dispositive for the following reasons:

> The court notes that this appears to be the only time knowledge on this basis is asserted in the 18 months of proceedings before this court and the state court, and in the approximately 11 inches of pleadings filed on the issue of violation of the discharge. At the [Hearing], no testimony was provided as to this allegation. The court finds it is not clear and convincing evidence that [Ms.] Macias knew of the discharge.

Memorandum Decision, at p. 3 n.3.

The bankruptcy court also addressed the Debtors' allegations that Ms. Macias violated the discharge injunction by cooperating with an investigation conducted by the California Department of Real Estate with respect to the Debtors' business practices and by speaking out against the Debtors' business operations within

-8-

their common religious community. The bankruptcy court found that the discharge injunction did not prohibit Ms. Macias from engaging in such speech, and no evidence was presented to the effect that such speech by Ms. Macias was undertaken to collect a discharged debt. In fact, the bankruptcy court further concluded that harming the Debtors' business operations would be counterproductive if Ms. Macias' goal was to collect a debt, discharged or otherwise. The bankruptcy court ultimately determined that the Debtors had not established by clear and convincing evidence that Ms. Macias had violated the discharge injunction order in the Chapter 7 Case.

As to Mr. Coker, the bankruptcy court first noted that Mr. Coker "was not, and never has been, a creditor of Debtors." Memorandum Decision, at p. 2. However, the Debtors asserted that Mr. Coker assisted Ms. Macias in preparing her cross-complaint against them, and as Ms. Macias' counsel, failed to dismiss the cross-complaint immediately after receiving notice of the Chapter 7 Case discharge in a letter from the Debtors.

The bankruptcy court found that Ms. Macias filed her cross-complaint against the Debtors in the Second Suit on October 24, 2011. Mr. Coker received a letter from Mr. Gutierrez on November 28, 2011, advising Mr. Coker that the debt included in Ms. Macias' cross-complaint was discharged, and any effort to collect that debt violated federal law. The bankruptcy court found that Mr. Coker responded promptly on November 30, 2011, acknowledging that the Debtors had provided a partial copy of the discharge order and stating that if the information provided was correct, no further action to collect on the claim asserted in

Ms. Macias' cross-complaint would be taken. However, the bankruptcy court further noted that Mr. Coker had stated that Ms. Macias had no knowledge of any discharge, and he indicated that he was going to "review whether setoff of the discharged debt might still be available." Memorandum Decision, at p. 4. Mr. Coker subsequently filed a motion to amend the cross-complaint to assert only a claim for setoff, but before the motion was determined, Ms. Macias voluntarily dismissed the cross-complaint on February 7, 2012.

Noting that the Debtors did not allege that Mr. Coker had any knowledge of their discharge prior to November 28, 2011, the bankruptcy court found that his actions following their informal letter notice did not constitute a clear violation of the discharge injunction. Accordingly, the bankruptcy court found against the Debtors on the Motion both as to Ms. Macias and Mr. Coker.

Consistent with its findings and conclusions in the Memorandum Decision, the bankruptcy court entered its Order denying the Motion on September 9, 2013. The Debtors timely appealed.

E.   Epilogue

After the bankruptcy court abstained from hearing the state law claims asserted in the Debtors' adversary proceeding, the Debtors filed a new lawsuit ("Third Suit") in State Court against Mr. and Ms. Macias and Lorena Mendez, seeking three million dollars in damages. The Debtors' allegations in the Third Suit were essentially the same as in their prior State Court lawsuits. After the defendants had filed answers and cross-complaints for

-10-

abuse of process, among other claims, the Debtors agreed to dismiss the Third Suit with prejudice, and the cross-complaints also were dismissed with prejudice.

## II.   JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O).  We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Did the bankruptcy court err in determining that Ms. Macias and Mr. Coker did not willfully violate the discharge injunction in the Debtors' Chapter 7 Case?

## IV.   STANDARDS OF REVIEW

"We review the decision to impose contempt for an abuse of discretion, and underlying factual findings for clear error." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard under the facts before it.  United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).  If the bankruptcy court applied the correct legal standard, the question then becomes "whether the . . . court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or without 'support in inferences that may be drawn from the facts in the record.'"  Id. (quoting Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 577 (1985)).  Clear error exists when, on the entire record, the reviewing court has a definite and firm

conviction that a mistake was made. Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 509 (9th Cir. BAP 2007). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574.

We may affirm a decision of the bankruptcy court on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

Section 524 provides that a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor." § 524(a)(2). To justify the imposition of contempt sanctions for violating the discharge injunction, the Ninth Circuit has adopted a two-part test: The debtor must establish by clear and convincing evidence "that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002). Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006) ("A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code.").

These are precisely the legal standards applied by the bankruptcy court in its Memorandum Decision, and the Debtors do not argue otherwise. Construing the Debtors' pro se briefs liberally, what they do argue is that the bankruptcy court misapplied the applicable legal standards based on the evidence

before it.  We disagree for the following reasons.

1.  <u>Ms. Macias</u>

The Debtors argue that Ms. Macias violated the discharge injunction by pursuing her cross-complaint in the Second Suit when she had knowledge of the Debtors' discharge in the Chapter 7 Case from the bankruptcy court and from the Debtors.  The record before the bankruptcy court contained contradictory evidence on this point.  The Debtors contended that Ms. Macias received a copy of their discharge order and presented evidence that the Bankruptcy Noticing Center sent the discharge order to Ms. Macias on May 29, 2009 at the Residence Property.  Ms. Macias countered that she had moved out of the Residence Property following foreclosure in March 2009, and although she had provided a forwarding address for her mail to the postal service, they kept delivering her mail to the Residence Property.  Although Ms. Macias admitted that she knew about the Debtors' bankruptcy filings, she stated in her Declaration that she did not know that they had received a discharge in this Chapter 7 Case, testimony that she reiterated under oath at the Hearing.  The bankruptcy court found that there was no evidence to the contrary.  The parties presented two not necessarily contrary versions of the facts concerning whether Ms. Macias received a copy of the discharge order and thus knew that the Debtors had received a discharge.  On this mixed record, the bankruptcy court concluded that the Debtors had not proved by clear and convincing evidence that Ms. Macias knew that the discharge injunction was applicable.  We perceive no error in that determination.

The bankruptcy court also considered Ms. Gutierrez'

-13-

assertion in her Declaration that Ms. Macias had been informed that the Debtors had obtained a discharge of their debts during the course of a settlement conference in 2010. Noting that over the course of 18 months of proceedings in the State Court and the bankruptcy court and in their voluminous papers, the Debtors only referred to such a communication to Ms. Macias on one occasion, and no testimony to support this allegation was presented at the Hearing, despite the fact that Ms. Gutierrez testified, the bankruptcy court emphatically determined that the Debtors did not establish by clear and convincing evidence that Ms. Macias knew of their bankruptcy discharge from their direct communications. Memorandum Decision, at p. 3 n.3. Again, we perceive no error in the bankruptcy court's determination on this point based on the entire record before it.

Finally, the Debtors contend that Ms. Macias violated the discharge injunction by cooperating with the investigation of the California Department of Real Estate that resulted in Mr. Gutierrez losing his broker's license and by speaking against the Debtors' business practices with people in their common religious community. The bankruptcy court found no violation of the discharge injunction on these bases for two reasons: first, because the discharge injunction did not prohibit such speech; and second, because no evidence was presented tending to establish that Ms. Macias' conduct was an effort to collect a discharged debt. As the bankruptcy court noted, such conduct "would be counter to any collection efforts." Memorandum Decision, at p. 5. We conclude, particularly based on the second rationale articulated by the bankruptcy court for its

-14-

determination, that the bankruptcy court did not err in its conclusion that such evidence of conduct by Ms. Macias did not establish a violation of the discharge injunction.

Ultimately, we conclude, based on the record before us, that the bankruptcy court did not err in deciding that the Debtors did not meet their burden of proof to establish that Ms. Macias committed a sanctionable violation of the discharge injunction in the Chapter 7 Case.

### 2. Mr. Coker

The Debtors argue that Mr. Coker violated the discharge injunction by assisting Ms. Macias in the preparation of the cross-complaint against them in the Second Suit and in failing to dismiss Ms. Macias' cross-complaint immediately after receiving notice of the Debtors' discharge in a letter from Mr. Gutierrez. Mr. Coker is not a creditor of the Debtors, and they do not assert otherwise.

The uncontradicted evidence before the bankruptcy court was that Ms. Macias prepared the cross-complaint herself with the assistance of a law student, and it was filed on October 24, 2011. Mr. Coker was not involved in the preparation of the cross-complaint. From the record before us, it appears that Ms. Macias filed the cross-complaint in an effort to counter the Debtors' harassment through their State Court lawsuits.

The record is also clear that Mr. Coker was not aware of the Debtors' bankruptcy discharge until receiving Mr. Gutierrez' letter on November 28, 2011. As noted by the bankruptcy court, Mr. Coker promptly responded two days later on November 30, 2011, stating that if, in fact, the Debtors had discharged their

obligation to Ms. Macias in bankruptcy, no further collection efforts would be taken. However, he also stated that Ms. Macias was not aware that the Debtors had obtained a discharge, and he would investigate whether a setoff of the discharged debt might still be available to Ms. Macias.

The record reflects that Mr. Coker is not a bankruptcy attorney. He did file a motion to amend the cross-complaint to assert only a setoff claim. However, after consulting with the bankruptcy counsel retained to represent all of the defendants in the Debtors' adversary proceeding, Mr. Coker voluntarily dismissed the cross-complaint on February 7, 2012, before any action was taken on the motion to amend.

On this record, Mr. Coker could be faulted for failing to do the limited research required to determine that the Debtors' debt to Ms. Macias in fact had been discharged and to dismiss the cross-complaint more quickly. However, we conclude that the bankruptcy court did not err in determining that the Debtors did not meet their burden of proof to establish by clear and convincing evidence that Mr. Coker willfully violated the discharge injunction. Cf. Knupfer v. Lindblade (In re Dyer), 322 F.3d at 1196-97.

## VI. CONCLUSION

Based on the foregoing authorities and analysis, we AFFIRM the bankruptcy court's Order denying the Motion.

-16-